Matthew M. Levy, J.
This proceeding and this action arise from a struggle for the control of a hospital known as the University Heights Sanitarium and of the building occupied by it. For convenience, I shall name the contending factions as the Goldstein group and the Procario group. The principal individuals involved in both factions in these - litigations are the officers, directors and stockholders of the two corporations, and they are members of the medical profession who — while antagonists before the court — necessarily work side by side at the hospital in the care and treatment of the sick who are their patients. At the close of the extended trial, and pending the rendition of my final decision, I suggested (in line with a status quo arrangement I had worked out with counsel as a pendente lite matter at the inception of the litigation, and embodied in the interim order of June 18, 1954) a modus operandi for the continued conduct of the corporate affairs of the companies. That suggestion was accepted by the parties, and I withheld my determination for some time. I harbored the hope that — after the oppressive heat of the litigious battle had passed away — the responsible doctors involved on both sides of this unfortunate controversy would (with the aid of their capable counsel) by living together peaceably as copractitioners in the same hospital premises, be able to resolve their differences amicably. I regret to say that that has not yet come about; and thus it is that I have finally concluded to file my determination on the merits.
*535 I do not deem it necessary here to record all the facts or to cite all the precedents upon which I have relied in coming to the judgment which I am now about to render, for the parties have presented some 191 proposed findings of fact and 28 conclusions of law in the action, and 206 proposed findings and 26 conclusions in the proceeding — and they have been passed upon. I do wish, however, to note in this memorandum the principal bases for my determination.
I agree with the contention of the Goldstein group that the equitable doctrine of a fiduciary’s responsibility in relation to a ‘ ‘ corporate opportunity ” “is not applicable if the opportunity is one which the corporation is financially unable to undertake ” (Blaustein v. Pan Amer. Petroleum & Transp. Co., 263 App. Div. 97, 128, affd. 293 N. Y. 281). But here there was something more — a species of unfair dealing by the fiduciary which was designed to avoid a true understanding by his associates of the likely result of their rejection of the corporate opportunity as initially projected and which was intended to preclude any attempt at the procurement of a satisfactory enlargement of the opportunity upon which a knowing board of directors might act. In such circumstances the court is called upon to act.
With the artistic stroke of the judicial brush that will instantly be recognized as the genius that was Cardozo’s, the applicable legal picture was effectively painted by the Court of Appeals in Meinhard v. Salmon (249 N. Y. 458, 464) in striking and attractive colors: ‘ ‘ Many forms of conduct permissible in a workaday world for those acting at arm’s length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncomprising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the ‘ disintegrating erosion ’ of particular exceptions ”.
Measured by this standard, have Goldstein’s actions passed the test? In my opinion, they have not. As the corporate representative in consultation with Jameson, it was Goldstein’s duty to the corporations to attempt to get for them the best possible terms for the purchase of Jameson’s stock — that is, either all at a lower price, or only part at the price requested. But, as the pleased personal offeree of Jameson’s proposal to him — if, indeed, the private arrangement between them was not projected and facilitated by him — it naturally was Goldstein’s desire *536 that the corporations reject the offer which Jameson was bound, in the first instance, to make to the corporations. Goldstein was thus placed in a position where his personal interests came into direct conflict with his fiduciary duty to the corporations. In consequence, he did not disclose to all of the corporate directors and stockholders or at the meetings, that he had made a secret deal with Jameson; he did not disclose to the corporations that while they were required to pay $90 cash per unit he would be able to make the same purchase for a price substantially less and on some credit terms, at that; he ruled in substance that the Jameson offer was on an " all-or-nothing ”, a "take-it-or-leave-it ”, basis; and he did not permit free consideration of any likely counterproposals by the corporations to Jameson.
In short, it is my view that good faith on Goldstein’s part — as president, director and presiding officer at the meetings at which Jameson’s offer was presented — demanded complete disclosure by him of all of the facts and full facility for deliberation thereon. For the inequitable conduct here disclosed, there should be appropriate equitable redress. It does not satisfy the sensitive conscience of equity to be told that Procario and his group — in this internecine fight for control — would have done the same thing or perhaps worse, if they had had the chance. The morals of the passive contender are not now in issue. It is the fiduciary who cannot be permitted to enjoy the luxury of easy virtue.
Nor is it a defense to the perpetration of the equitable fraud by the fiduciary that there was no adequate surplus in the corporations to accept in full the offer as then made to them by Jameson. If fiduciaries are permitted to justify their conduct on the theory that, by reason of its financial straits, the corporation could not make the purchase as proposed, and that, the fiduciaries should therefore be permitted to assume a position in which their individual interests might be in conflict with those of the corporation, 4 4 there will be a temptation to refrain from exerting their strongest efforts on behalf of the corporation since, if it does not meet the obligations, .an opportunity of profit will be open to them personally. ’ ’ (Irving Trust Co. v. Deutsch, 73 F. 2d 121, 124, cert, denied 294 U. S. 708.) The personal profit thus forbidden a fiduciary faithless to the devotion required of , him in good conscience is not, as urged by the Goldstein group, to be limited to the mundane sphere of economics alone. It may, I think, include a desire for individual prestige or factional power or it may result from a sincere disagreement as to personalities or policies or ideologies. Moreover, as I foresee it, financial gain there may well be in one way or another for the medical men who control *537 the corporate destinies of the hospital and realty companies here involved.
It is further urged by the Goldstein group that — while Jameson was quite willing to sell his stock to Goldstein at lesser terms than called for by Jameson’s contract with the corporations— he would not do that if the corporations were the purchasers. And that, it is argued, absolves Goldstein of his nondisclosure of the Goldstein-Jameson secret arrangements. Assuming the premise to be true, it seems to me that the fiduciary’s obligation of good faith to and fair dealing with his companies still remains. In the circumstances disclosed by this record, that duty involved, at the least, a full and frank disclosure to the corporate directors of Jameson’s existing state of mind. If Goldstein had not engaged in the concealment of all the facts, the directors might have asked him as their president to use his influence with Jameson to sell the stock to the companies at the same terms as offered to Goldstein. If Gold-stein refused to undertake the assignment, another negotiator might have been selected to represent the corporations; and if Goldstein assumed to act, Jameson might have been willing to abide by the corporations’ desires. If Jameson, in no event, would change his mind, and Goldstein made full disclosure, there would have been time enough to have permitted Goldstein’s purchase of the stock for himself and his favored colleagues.
I have come, therefore, to the conclusion that Goldstein and those of his group having knowledge of the situation must permit the corporations to have the benefit of the Jameson-Goldstein secret deal. As I study the financial status of the companies — book, accounting and actual (cf. Aron v. Gillman, 309 N. Y. 157; 31 N. Y. U. L. Rev. 608) — I find that there is adequate surplus to make the purchase at the lesser price. And the needed surplus, if need be, could be augmented by the sale pro rata to all stockholders who desire it of the unissued treasury stock, or even by voluntary personal contributions to the corporations by those who wish openly to make them in the protéction <5f their understandable interests.
My determination to grant due relief to the Procario group does not affect those purchasers of the Jameson stock who were not aware of the private Jameson-Goldstein deal and who bought their stock in innocence and in good faith — and they are absolved from any responsibility, even though they were, initially, among the nominees or designees of Goldstein.
As I have said earlier, all of the many and detailed findings and conclusions have been passed upon. I think it should be noted here that, in sp.m,e instances, I have not accepted the pro *538 posed findings and conclusions of the Procario (and, in the main, the successful) group. Some, I have corrected or modified. At this point also I want to record that I have accepted certain of the findings and conclusions of the Goldstein group. In some instances, I have also corrected or modified them — and then found them; otherwise, as specifically proposed, they would have been rejected. In other instances, I have corrected or modified the Goldstein proposed findings and conclusions, and then refused them. These, as worded, might have been acceptable; but I deemed the changes necessary to give adequate information to the parties as to all of the bases for my determination, since I have discussed only the principal features' of them in this opinion.
The decisions have been signed. Settle the judgment and final order accordingly. The exhibits are now in the possession of the clerk, and they may be obtained by respective counsel upon appropriate receipt therefor.