LEONARDO FARANO, Appellant, *v.* EVA STEPHANELLI et al., Respondents.

First Department, March 17, 1959.

*Meyer Maltz* of counsel (*Cohen & Maltz,* attorneys), for appellant.

*Joseph A. Doran* of counsel (*Henry D. Sforza* and *Samuel La Rosa* with him on the brief; *Cardo & Sforza,* attorneys for Eva Stephanelli; *Samuel La Rosa,* attorney for Esther Mancini), for respondents.

BREITEL, J. Plaintiff father seeks to obtain a reconveyance of real property which he had previously deeded to his three daughters on the ground that they hold the property as constructive trustees. After trial judgment was rendered in favor of the defendants and the complaint dismissed. The father appeals.

The trial court, in its opinion, stressed the issue of whether express words were used by the daughters in agreeing to hold the property and to reconvey it to the father, if he should ever require it. True, the pleadings, the bill of particulars, and even the theory upon which the case was tried, stressed the existence of such express promise by the daughters. That may be, however, more than is required by law in determining whether or not a constructive trust had arisen in a confidential family relationship. Nor is the reach of equity so circumscribed. In the interests of justice, and in order to prevent a possible defrauding of an aging father by his daughters, a new trial is merited.

On December 7, 1955, the father deeded his property, consisting of a house and two one-story taxpayer-buildings in The Bronx, to his three daughters. There was no consideration of value involved. The deed was prepared by the father's lawyer, executed in the presence of one of the daughters, Mary Farano, and mailed to another of the daughters. Two of the daughters, Mrs. Stephanelli and Mrs. Mancini, the defendants in this case, claim that the transfer was a present gift without condition or promise attached.

On the trial, the third daughter, Mary, who is unmarried, testified, as did the father, that over a previous period of months the father had said he intended to convey the property to the daughters but that he would wish to have it returned to him if he so requested. The father also testified that he told all three of the daughters that " the best way [sic] not to wait till I die to get the property. I give it to you today. In case of unhappiness I would like to have the property back again.'' This conversation and others were described in general terms and some were not fixed as to particular times or places.

After the transfer of the property the father remained in possession, collected the rents, paid the various charges connected with the operation of the buildings, and otherwise exercised dominion over them. Moreover, he resided in the house, and still does. Six months later the father demanded the property back; that is, he demanded a reconveyance.

Following the father's demand, Mary quit-claimed to him. Mrs. Mancini and Mrs. Stephanelli refused, after Mrs. Stephanelli consulted with her husband. Mrs. Stephanelli testified

that earlier she had told Mary she might agree to a reconveyance. Her sole condition then was that the three daughters should sign the deed simultaneously. She did not remember whether she had spoken to the other sister, Mrs. Mancini, about a possible reconveyance on this basis.

Thereafter, this action was brought, and the defendant daughters in due time demanded an accounting from their father. These are the elemental facts.

In the background of the dispute is that Mary and Mrs. Mancini owned an equal interest in a home in Byram, Connecticut. During the six-month period following the deeding of the father's property Mrs. Mancini and Mary had a falling out, ending in fisticuffs. Mary departed from the Connecticut house and went to live with her father. Because of this event the defendant sisters charge Mary instigated the father's demand for reconveyance and fabricated the basis upon which the action was brought.

Significant, but perhaps not in the way that either side to this action may consider it, is this dispute, and even physical conflict, between the daughter Mary and Mrs. Mancini over the house in Connecticut. Defendants argue that such conflict supplied the motive for Mary's instigation. At the same time, it may have caused the father to become concerned about the property he had deeded and the house in which he lived. The fact is that despite her half-interest in the house, Mary no longer lives in the house in Byram. The father may have feared a similar fate. This, of course, on this slender record, is grossly speculative because most of the evidence with regard to this dispute was excluded on objection.

It is in this family transaction and in this family milieu that the trial court was required to determine whether, despite the absence of a written agreement, a constructive trust should be imposed.

While the record is sparse, other facts come through to reveal the character of the family involved in this case. The father's age does not appear, but Mrs. Stephanelli has been married for over 25 years. The father's wife, the mother of the daughters, died in 1951. From his testimony it appears that he was not born in this country and he speaks the language with some difficulty. All the members of the family testified to the closeness and intimacy of the relationships among them and of the absence of difficulties prior to the conflict over real property.

The law is quite clear that while the Statute of Frauds will prevent the enforcement of a trust unless it is evidenced by a written

memorandum (Real Property Law, § 242) that, nevertheless, a constructive trust will be imposed if the transfer was procured, among other things, by fraud or in an abuse of a confidential relationship. (Restatement, Trusts, § 44; 1 Scott, Trusts [2d ed.], § 44.2; 3 Bogert, Trusts, § 482.) ·

Thus, proof of a conveyance to a party standing in a confidential relationship, on an oral agreement to hold for the transferor's benefit or to reconvey on his demand, may be the basis for the imposition of a constructive trust. (Restatement, Restitution, §§ 166, 182; 4 Pomeroy, Equity Jurisprudence [5th ed.], § 1056a.) Such a confidential relationship may exist between parent and child. (*Harrington* v. *Schiller,* 231 N. Y. 278; *Wood* v. *Rabe,* 96 N. Y. 414; *Matter of Wicks,* 7 Misc 2d 407.) A constructive trust may be imposed even though the transferee fully intended to perform his promise at the time of the conveyance. Actual fraud or undue influence need not be shown. The subsequent abuse of the confidential relation constitutes a sufficient fraud to call upon the remedial powers of a court of equity (1 Scott, Trusts [2d ed.], § 44.2 *op. cit.*). There must, however, be more than the mere breach of an oral promise by a person standing in close relation to the transferee. (*Goldsmith* v. *Goldsmith,* 145 N. Y. 313, 318.) The confidential relationship must itself be the inducing cause of the conveyance. '' It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion.'' (*Sinclair* v. *Purdy,* 235 N. Y. 245, 253; see, also, *Wood* v. *Rabe* 96 N. Y. 414, *supra; Towner* v. *Berg,* 5 A D 2d 481.)

These principles of law are not disputed by the parties, and the trial court purported to apply them. The difficulty is that it was apparently assumed upon the trial, and so held by the trial court, that unless the daughters promised in so many words to reconvey the properties, if the father wished it, there was no basis for imposing a constructive trust. In confidential family relationships especially, mutual understanding does not always depend upon words expressly uttered. Moreover, in any relationship, depending upon the circumstances, silence in the presence of conditional assertions may constitute tacit consent and promise to comply with the conditions. (*Sinclair* v. *Purdy, supra;* 1 Williston, Contracts [3d ed.], § 91AA.)

In this case both the father and Mary testified to repeated assertions in the presence of the defendant daughters. These assertions were to the effect that he intended to convey his property to them but that he expected them to reconvey to him should he require it. The defendant daughters testified that

over a period of months before the deed was given the father had mentioned that he intended to deed his property to them, but denied the statement of any conditions. Thus, there could have been a question of fact whether the daughters by silence had acquiesced in the conditions, if they in fact had been stated. True, the father and Mary also testified, in conclusory language, that the daughters " so agreed ". Nevertheless, the persistent problem for the finder of the facts was to determine from the testimony, uttered by persons who did not use the language with exactness, just what happened, what was intended, and even more importantly, what impression was knowingly permitted to exist in the mind of the father when he spoke of transferring his properties to his daughters. The case should not have turned on any technical distinction between a tacit and an express promise for, if either were found, the legal effect would be the same.

In the leading case of *Sinclair* v. *Purdy* (235 N. Y. 245, *supra*), the Court of Appeals was confronted with a situation in which a sister had held property which had been conveyed to her by her brother. After both were dead action was brought, in another and complicated context, and the claim was asserted that she had held it for his benefit to the extent of a half interest. Involved was an underlying agreement by the brother to convey his half interest to his niece with whom he had lived and who had taken care of him in his last years, until he died at the age of eighty. Judge Cardozo, writing for the Court of Appeals, concluded that (p. 254): " Though a promise in words was lacking, the whole transaction, it might be found, was ' instinct with obligation ' imperfectly expressed (*Wood* v. *Duff-Gordon*, 222 N. Y. 88, 91)." Moreover, in language quite applicable to the circumstances in this case, the court went on to say, concerning the transfer to the sister, that (p. 254): " It was to be interpreted, not literally or irrespective of its setting, but sensibly and broadly with all its human implications. Even the denial of an express promise might not unfairly be discredited."

Of course, in the context of the *Sinclair* case there were many other indicia of the relationship between the brother and sister and the purpose for which the property was conveyed, as contrasted with those found here. Nevertheless, there is enough in this case to suggest a profounder inquiry into this family setting than the parties tendered upon the trial. But again, the issue need not be determined exclusively by whether or not the defendant daughters expressed in so many words a promise to reconvey the properties to the father if he should ask. (See *Towner* v.

*Berg,* 5 A D 2d 481, 484, *supra; Muller* v. *Sobol,* 277 App. Div. 884.)

Proof, moreover, may be admitted as to the conduct of the parties after the conveyance in question. A trust which is originally dependent upon word of mouth for proof of its existence may be confirmed by part performance thereunder. (*Foreman* v. *Foreman,* 251 N. Y. 237; *Alonzo* v. *Alonzo,* 10 Misc 2d 261, affd. 270 App. Div. 977; *Bartos* v. *Bartos,* 138 Misc. 117.) Thus, here, the execution and delivery of the deed in absolute form changed nothing with respect to the use of the property. The father continued to live in the house; he continued to collect the rents; he continued to pay the expenses of the property; and he continued in every wise as if he were still the sole and absolute owner. To this continued arrangement none of his daughters gainsaid.

Hanging over the whole case is a pall of deeper significance. The daughters' contention that the father made a present gift, absolute, not only in form but in content, means that they have become the unqualified owners of the property. They bolster this contention by their demand for an accounting from their father. It is hardly conceivable, in this family milieu, that all of the parties did not understand that the father was to continue to have the use of the house and perhaps of the rents and profits of the property, at least until he died. Yet, perforce, the position of the defendant daughters is to contradict any such agreement or any such understanding, tacit or expressed. It takes no special experience to appreciate the kind of transfer that this father was making to his daughters. Against the advice of his lawyer, he was going to make a transfer absolute in form, so that when he died no lawyer would share in the property. It is unlikely that he intended, in order to accomplish this result, that he deprive himself of his present home and the present income of his property. Certainly before such a conclusion is reached a greater delving into the facts is merited.

Much earlier it was noted that the pleadings, the bill of particulars, and even the theory upon which this case was tried, rested upon an express agreement in which the promise by the daughters was supposed to have been uttered in so many words. It was suggested at the outset that the reach of equity was not so circumscribed. In the area of constructive trusts and the exercise of the powers of equity there is no such narrow limitation upon the courts (see *Pattison* v. *Pattison,* 301 N. Y. 65, 67–69; cf. *Towner* v. *Berg,* 5 A D 2d 481, 484, *supra*).

In a case which arises out of the claimed abuse of a confidential relationship between an aging father and his daughters to whom he has conveyed property for no valuable consideration, the improvidence of a deed absolute in form should not be compounded by a subsequent improvidence in the form of a pleading.

If the proof in this case entitled the father to any kind of relief the court has power, by amendment or otherwise, to fashion the pleadings to allow the cause of action that has been proven. (Civ. Prac. Act, § 479; *Rogers* v. *New York & Texas Land Co.*, 134 N. Y. 197, 219; *Rait* v. *Netlee Constr. Corp.*, 283 App. Div. 1099; cf. *Bradley* v. *Aldrich*, 40 N. Y. 504, 510; *New York State Elec. & Gas Corp.* v. *City of Plattsburgh*, 256 App. Div. 732, 735.) It is quite significant that on either theory, that is, of express or tacit promise, the father's proof remains the same; the difference lies only in whether the daughters' denials are accepted or rejected, as to express promise made or the father's statement of conditions. There is, thus, no " hostility " between the pleadings and what may sustain plaintiff's right to relief. (See *Rogers* v. *New York & Texas Land Co., supra.*)

Because the record made by the parties is not entirely satisfactory, plaintiff has not established his right to relief in the face of the contrary findings by the trial court; but a new trial, in the interests of justice, is well warranted. In remitting the case for a new trial, however, the trial court should feel completely uninhibited as to the findings it may make, whether as to an expressed or tacit agreement. It is because this court is left in doubt as to the right of the case that a new trial should be directed, rather than to grant judgment in favor of the father.

Accordingly, the judgment in favor of defendants should be reversed, on the law and on the facts, and a new trial ordered, in the exercise of discretion, with costs to abide the event.

BOTEIN, P. J. (dissenting). The court below has found " that plaintiff has failed to establish that an agreement by the daughters to reconvey upon demand was made prior to the execution and delivery of the deed to them ". There is nothing in the opinion below to warrant an assumption that this holding was limited to plaintiff's failure to prove an agreement in express words for reconveyance to him. We must assume that the Trial Justice held that plaintiff had also failed to establish an inarticulated agreement that the daughters would reconvey on request, or the kind of understanding which can sometimes be extracted from a confidential family relationship even " Though

a promise in words was lacking '' (*Sinclair* v. *Purdy*, 235 N. Y. 245, 254).

Since there was ample evidence to support a holding that no express or implied agreement and no understanding for reconveyance was reached among the parties, and since there was no reversible error in the conduct of the trial, there is no warrant for affording plaintiff a second opportunity to obtain the same relief denied him upon the trial. I therefore believe the judgment appealed from should be affirmed. However, it may be that plaintiff can prove a constructive trust based upon an understanding, not that he could obtain a reconveyance upon request, but that he was to continue to retain the use of the property and the rents and profits therefrom for his lifetime. In that event, he may be better advised to bring an action for such relief; or in view of the direction for a new trial, to move to amend his complaint appropriately in the within action.

McNALLY, J. (dissenting). I dissent and vote to affirm the judgment below.

As fairly stated in the majority opinion, the pleadings, the bill of particulars and the theory upon which the case was tried stressed the existence of an express promise by the daughters. The Trial Judge found that no such promise was made and the record amply supports such finding. Moreover, the donees were the natural recipients of their father's bounty. It seems to me, in the circumstances, that the interests of justice point towards an affirmance. The donor is hoist with his own petard. He has made his bed — I say let him lie in it.

M. M. FRANK and BERGAN, JJ., concur with BREITEL, J.; BOTEIN, P. J., and McNALLY, J., dissent in separate opinions.

Judgment reversed on the law and on the facts, and a new trial ordered in the exercise of discretion, with costs to abide the event.