Lillian N. BURG, Plaintiff-Appellant,

v.

Max HORN and George Horn,
Defendants-Appellees,

and

Darand Realty Corp., Defendant.

No. 407, Docket 30926.

United States Court of Appeals
Second Circuit.

Argued April 18, 1967.

Decided July 18, 1967.

See also D.C., 37 F.R.D. 562.

15s898

Irving Bizar, New York City, for plaintiff-appellant.

Harold Kieval, New York City, for defendants-appellees.

Before LUMBARD, Chief Judge, and KAUFMAN and HAYS, Circuit Judges.

LUMBARD, Chief Judge:

This appeal in a diversity action by the plaintiff, Lillian Burg, a citizen of California and a one-third stockholder of Darand Realty Corp., a New York corporation which owns and operates low-rent rooming and apartment buildings in Brooklyn, from a judgment of Judge Dooling in the Eastern District dismissing her derivative complaint insofar as it alleged that nine similar buildings in Brooklyn acquired by the defendants George and Max Horn, citizens of New York and holders of the remaining stock of Darand, were corporate opportunities belonging to Darand, requires us to consider the scope of the duty imposed by New York law on directors and majority stockholders not to appropriate for themselves opportunities which would be advantageous to their corporation. We hold that Judge Dooling correctly concluded that, under New York law, the properties acquired by defendants were not corporate opportunities of Darand, and we affirm the judgment below.

Darand was incorporated in September 1953 with a capital of $5500, subscribed equally by the three stockholders, Mrs. Burg and George and Max Horn, all of whom became directors, and immediately purchased a low-rent building in Brooklyn. The Horns, who were engaged in the produce business and had already acquired three similar buildings in Brooklyn through wholly-owned corporations, urged the Burgs, who were close friends then also residing in Brooklyn, to "get their feet wet" in real estate, and the result was the formation of Darand. The Burgs testified that they expected the Horns to offer any low-rent properties they found in Brooklyn to Darand, but that there was no discussion or agreement to that effect. The Horns carried on the active management of Darand's properties, and the plaintiff's husband, Louis Burg, an accountant who became an attorney in 1957, handled its accounting and tax planning. The stockholders generally drew equal amounts from Darand at the end of each

taxable year, and then immediately repaid them to "loan accounts," from which they could draw when they desired.

Darand sold its first property and acquired another in 1956, and purchased two more buildings in 1959. From 1953 to 1963, nine similar properties were purchased by the Horns, individually or through wholly-owned corporations. One, purchased by Max Horn in 1954 and sold in 1955, was partly paid for by loans of $600 from Darand and $2000 from Louis Burg. Two others, acquired in 1955 by a corporation wholly owned by the Horns, were paid for in part by a loan of $200 from Darand to the wholly-owned corporation and, apparently, by loans aggregating $4250 from Louis Burg to Max Horn. The Burgs testified that they did not know the purposes of these loans, and that, while they knew of the Horns' ownership of some of the properties they now contend were corporate opportunities of Darand, they thought they had been acquired before 1953.

In 1962 the Burgs moved to California, and disagreements thereafter arose between them and the Horns concerning the accounting for rent receipts and expenditures of Darand. This action seeking an accounting for receipts and expenditures and the imposition of a constructive trust on the alleged corporate opportunities was brought in 1964. After a six-day trial, Judge Dooling held that the Horns had failed to account for $7,893.36 of rent receipts for 1961–1964. This holding has not been appealed. He found, however, that there was no agreement that all low-rent buildings found by the Horns should be offered to Darand, and that the Burgs were aware of the purposes of the loans from Darand and Louis Burg and of at least some of the Horns' post-1953 acquisitions. He therefore declined to hold that those acquisitions were corporate opportunities of Darand.

■ Since the Horns are charged with breaching their fiduciary duty to a New York corporation doing business only in New York by acquiring properties located in New York, their liability is governed by New York law. Hausman v. Buckley, 299 F.2d 696, 702–705 (2 Cir.), cert. denied, 269 U.S. 885, 82 S.Ct. 1157, 8 L.Ed.2d 286 (1962); Upson v. Otis, 155 F.2d 606, 610 (2 Cir. 1946); Restatement (Second), Conflict of Laws §§ 187, 188 (Tent.Draft No. 7, 1963). Under New York law, property acquired by a corporate director will be impressed with a constructive trust as a corporate opportunity only if the corporation had an interest or a "tangible expectancy" in the property when it was acquired. Blaustein v. Pan Am. Petroleum & Transp. Co., 293 N.Y. 281, 300, 56 N.E. 2d 705, 713–714 (1944). Although some commentators have criticized the "interest or expectancy" test as vague and unhelpful, see, e. g., Walker, Legal Handles Used to Open or Close the Corporate Opportunity Door, 56 Nw.U.L. Rev. 608, 612–13 (1961), it clearly expresses the judgment that the corporate opportunity doctrine should not be used to bar corporate directors from purchasing any property which might be useful to the corporation, but only to prevent their acquisition of property which the corporation needs or is seeking, or which they are otherwise under a duty to the corporation to acquire for it. Cf. Fuller, Restrictions Imposed by the Directorship Status on the Personal Business Activities of Directors, 26 Wash.U.L.Q. 189, 193 (1941).

■ Thus a director may not purchase for himself property under lease to his corporation, Robinson v. Jewett, 116 N.Y. 40, 51–53, 22 N.E. 224 (1889), cf. Meinhard v. Salmon, 249 N.Y. 458, 463–468, 164 N.E. 545, 546–548, 62 A.L. R. 1 (1928) (joint venture), or draw away existing customers of the corporation. E. g., Sialkot Importing Corp. v. Berlin, 295 N.Y. 482, 68 N.E.2d 501 (1946). Nor may he purchase property which the corporation needs or has resolved to acquire, Blake v. Buffalo Creek R.R., 56 N.Y. 485 (1874), or which it is contemplating acquiring. New York Trust Co. v. American Realty Co., 244 N.Y. 209, 219, 155 N.E. 102, 105 (1926). He may not take advantage of

an offer made to the corporation, e. g., Kelly v. 74 & 76 West Tremont Ave. Corp., 4 Misc.2d 533, 151 N.Y.S.2d 900 (Sup.Ct.1956), modified on other grounds sub nom. Procario v. 74 & 76 West Tremont Ave. Corp., 3 A.D.2d 821, 160 N.Y. S.2d 932 (1 Dep't), aff'd mem., 3 N.Y.2d 973, 169 N.Y.S.2d 39, 146 N.E.2d 795 (1957), or of knowledge which came to him as a director. See, e. g., In re McCrory Stores Corp., 12 F.Supp. 267 (S.D.N.Y.1935). Compare Wolf v. Weinstein, 372 U.S. 633, 639–653, 83 S.Ct. 969, 10 L.Ed.2d 33, (1963). None of these proscriptions aids the plaintiff, however, for there is no evidence that the properties she seeks for Darand were offered to or sought by Darand, came to the Horns' attention through Darand, or were necessary to Darand's success.

■ Plaintiff apparently contends that defendants were as a matter of law under a duty to acquire for Darand further properties like those it was operating. She is seemingly supported by several commentators, who have stated that any opportunity within a corporation's "line of business" is a corporate opportunity. E. g., Note, Corporate Opportunity, 74 Harv.L.Rev. 765, 768–69 (1961); Note, A Survey of Corporate Opportunity, 45 Geo.L.J. 99, 100–01 (1956). This statement seems to us too broad a generalization. We think that under New York law a court must determine in each case, by considering the relationship between the director and the corporation, whether a duty to offer the corporation all opportunities within its "line of business" is fairly to be implied. Had the Horns been full-time employees of Darand with no prior real estate ventures of their own, New York law might well uphold a finding that they were subject to such an implied duty.

But as they spent most of their time in unrelated produce and real estate enterprises and already owned corporations holding similar properties when Darand was formed, as plaintiff knew, we agree with Judge Dooling that a duty to offer Darand all such properties coming to their attention cannot be implied absent some further evidence of an agreement or understanding to that effect.[1] Judge Dooling's finding that there was no such understanding is not clearly erroneous.

■ Although we have found no New York case involving similar facts, our holding that the scope of a director's duty to offer opportunities he has found to his corporation must be measured by the facts of each case seems more consistent than any other with the holdings of New York courts applying the "interest or expectancy" test.[2] Moreover, the decisions of other courts in analogous cases support our conclusion. The Supreme Court of Delaware held in Johnston v. Greene, 35 Del.Ch. 479, 121 A.2d 919 (1956), that a director of several corporations who was offered the patents and stock of a corporation engaged in an unrelated business and who arranged for the purchase of the stock by one of the corporations of which he was a director did not appropriate a corporate opportunity of that corporation by retaining the patents. The court recognized that a corporation's need to invest funds and a director's duty to seek investments for it might convert an investment opportunity offered to the director into a corporate opportunity, but held that

"whether it does * * *, in any particular case, depends on the facts —upon the existence of special circumstances that would make it unfair for him to take the opportunity for

---

1. This conclusion is reinforced by the small initial capitalization of Darand, which made a plowback of profits or further capital contributions by its stockholders necessary for acquisition of additional properties.

2. See Blaustein v. Pan Am. Petroleum & Transp. Co., 263 App.Div. 97, 125–128,

31 N.Y.S.2d 934, 962–964 (1 Dep't 1941), aff'd on this point, 293 N.Y. 281, 300, 56 N.E.2d 705, 713–714 (1944); Litwin v. Allen, 25 N.Y.S.2d 667, 685–690 (Sup.Ct. 1940). See also Turner v. American Metal Co., Ltd., 268 App.Div. 239, 252–253, 50 N.Y.S.2d 800, 812–814 (1 Dep't 1944), appeal dismissed 295 N.Y. 822, 66 N.E.2d 591 (1946).

himself." 35 Del.Ch. at 488, 121 A.2d at 924.

The court found especially persuasive against the existence of such special circumstances the fact that the director served on several boards. Accord, Austrian v. Williams, 103 F.Supp. 64, 76–80 (S.D.N.Y.), rev'd on other grounds, 198 F.2d 697 (2 Cir.), cert. denied, 344 U.S. 909, 73 S.Ct. 328, 97 L.Ed. 701 (1952). It has been urged that the reasoning of Johnston v. Greene is fallacious because the fact that a director may be under fiduciary obligations to more than one corporation should lead a court to find and enforce the strongest obligation, not to allow the director to disregard them all. Note, Corporate Opportunity, 74 Harv.L.Rev. 765, 770–771 (1961); Note, The Doctrine of Corporate Opportunity, 26 U.Cin.L.Rev. 104, 108–109 (1957). This criticism seems to us to miss the point underscored by the facts of this case, that a person's involvement in more than one venture of the same kind may negate the obligation which might otherwise be implied to offer similar opportunities to any one of them, absent some contrary understanding. Cf. Homestake Mining Co. v. Mid-Continent Exploration Co., 282 F.2d 787, 798–802 (10 Cir. 1960) (mining joint venture). Thus we affirm Judge Dooling's holding that the properties acquired by defendants were not corporate opportunities of Darand.[3]

█ A director may be barred from competing with his corporation even though he does not by doing so appropriate a corporate opportunity. Foley v.

D'Agostino, 21 A.D.2d 60, 67–68, 248 N.Y.S.2d 121, 129 (1 Dep't 1964); cf. Lincoln Stores, Inc. v. Grant, 309 Mass. 417, 34 N.E.2d 704 (1941). But the duty not to compete, like the duty to offer opportunities to the corporation, is measured by the circumstances of each case, so that the considerations which led us to hold that the properties acquired by the Horns were not corporate opportunities strongly suggest a finding that the Horns were free to compete by acquiring them. In any event, there is no evidence in the record suggesting that Darand has been harmed by the Horns' ownership and operation of the properties they acquired. See, e. g., Broderick v. Blanton, 59 N.Y.S.2d 136 (Sup.Ct.1945); Note, Fiduciary Duty of Officers and Directors Not to Compete With the Corporation, 54 Harv.L.Rev. 1191, 1197–99 (1941); cf. Restatement (Second), Agency § 393, Comment b (1958).

█ There remains plaintiff's contention that three of the nine properties purchased by the Horns after 1953 were paid for in part by loans improperly obtained from Darand and Louis Burg without disclosure of their purpose. Were this contention sustained, it would not alter our conclusion that these three properties were not corporate opportunities of Darand, but it might justify the imposition of a constructive trust on the three properties. However, plaintiff has not contended that a constructive trust should be imposed on the properties either because the loans from Darand were improper, compare Equity

---

3. Plaintiff has not argued, and the record does not suggest, that the properties the Horns offered to Darand were less profitable or more speculative than those they retained. Therefore we do not decide whether such a showing would establish a breach by the Horns of their duty to Darand.

We do not mean to suggest that New York courts would hold that the fiduciary obligations of directors or majority stockholders are relaxed in a close corporation. It has been forcefully argued, in fact, that in an "incorporated partnership" such obligations should parallel the stricter ones imposed upon partners or joint venturers. See, e. g., Kruger v. Gerth, 16 N.Y.2d 802, 806, 263 N.Y.S.2d 1, 3, 210 N.E.2d 355, 357 (1965) (Fuld, J., dissenting); Conway, The New York Fiduciary Concept in Incorporated Partnerships and Joint Ventures, 30 Fordham L.Rev. 297 (1961). We conclude only that under New York law the field of opportunity barred to the directors and majority stockholders of any corporation must be determined by its particular circumstances, not by the application of a rigid "line of business" test.

Corp. v. Groves, 294 N.Y. 8, 13–14, 60 N.E.2d 19, 21–22 (1945), or because a relationship of trust and confidence existed between the Horns and the Burgs,[4] compare Farano v. Stephanelli, 7 A.D.2d 420, 183 N.Y.S.2d 707 (1 Dep't 1959), and the record does not contain the facts required to determine whether such a trust should be imposed. For example, given the apparent disregard of corporate formalities in Darand, the loans from Darand, which plaintiff first introduced in cross-examining George Horn on the sixth and last day of trial, may well have been proper,[5] and the apparent acquiescence of Louis Burg, who reviewed Darand's checks, strongly suggests that they were. Moreover, Judge Dooling's finding that the Burgs, contrary to their testimony, knew the purposes of the loans is not clearly erroneous. Thus we would not be justified in remanding the case for consideration of the possibility of imposing a constructive trust on these three properties.

Affirmed.

HAYS, Circuit Judge (dissenting):

I dissent.

My brothers hold that the scope of a director's duty to his corporation must be measured by the facts of each case. However, although they are unable to find any New York case presenting the same facts as those before us, they conclude that New York law does not support the imposition of liability in the circumstances of this case. I do not agree.

In an often quoted passage, the New York Court of Appeals laid down the principles of fiduciary conduct:

"Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee

is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303.[1926]. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd." Meinhard v. Salmon, 249 N.Y. 458, 464, 164 N.E. 545, 546, 62 A.L.R. 1 (1928), See, e. g., Albert A. Volk Co., Inc. v. Fleschner Bros., Inc., 298 N.Y. 717, 83 N.E.2d 15 (1948) ; Foley v. D'Agostino, 21 A.D.2d 60, 66–68, 248 N.Y.S. 2d 121, 128–129 (1st Dept. 1964) and cases there cited.

Applying these standards to the instant case it seems clear that in the absence of a contrary agreement or understanding between the parties, the Horns, who were majority stockholders and managing officers of the Darand Corporation and whose primary function was to locate suitable properties for the company, were under a fiduciary obligation to offer such properties to Darand before buying the properties for themselves. See Note, Corporate Opportunity, 74 Harv.L.Rev. 765, passim (1961). See also Note, Fiduciary Duty of Officers and Directors Not to Compete With the Corporation, 54 Harv.L.Rev. 1191 (1941). That the Horns used Darand's funds to effectuate certain of these purchases reinforces the conclusion that their conduct was improper and failed to comport with the standards established by law.[1] Cf. Guth v. Loft, Inc., 23 Del.Ch. 255, 5 A.2d 503

---

4. Such a theory would require an amendment of plaintiff's complaint to state a cause of action in favor of Louis Burg, who is not a party.

5. The loan from Darand to Max Horn might well have been charged against an existing or prospective "loan account."

1. The evidence in the record is insufficient to support the finding that the Burgs were aware of the Horns' purchases outside Darand and knew the purposes of the loans from Darand to the Horns but nevertheless acquiesced in the Horns' activities.

(Sup.Ct.1939); Note, supra, 74 Harv. L.Rev. at 776–778.

Since the Horns were under a fiduciary duty imposed by law not to take advantage for themselves of corporate opportunities, it is irrelevant that, as the district court found, there was no agreement under which "the Horns would contract their real estate activities or offer every property they located to Darand." *A fortiori* the Horns were not free to select the best properties for themselves. See Kelly v. 74 & 76 West Tremont Avenue Corp., 4 Misc.2d 533, 535–537, 151 N.Y.S.2d 900, 902–904 (Sup.Ct.1956), modified, 3 A.D.2d 821, 160 N.Y.S.2d 932 (1st Dept.), aff'd mem., 3 N.Y.2d 973, 169 N.Y.S.2d 39, 146 N.E.2d 795 (1957); Restatement (2d), Agency § 393, comment b.