**John WEIGEL, Plaintiff-Appellant,**

v.

**Howard SHAPIRO, Jacqueline Shapiro, J. W. O'Connor and Weigel Broadcasting Company, Defendants-Appellees.**

No. 78–2628.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 18, 1979.
Decided Oct. 29, 1979.

James S. Gordon, Chicago, Ill., for plaintiff-appellant.

Bernard Weisberg, Chicago, Ill., for defendants-appellees.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

CUMMINGS, Circuit Judge.

The plaintiff, a Wisconsin citizen, brought this diversity action derivatively for and on behalf of defendant Weigel Broadcasting Company, an Illinois corporation. The three individual defendants are also citizens of Illinois. Weigel Broadcasting operates television station WCIU in Chicago. Its capital stock consists of 4,588 shares of preferred stock with a par value of $100 and 181,669 shares of common stock with a par value of $1. The verified complaint states that the Corporation has approximately 300 shareholders, but that during the relevant period there was no public market for either the common or preferred stock, and splinter blocks were sold only at low prices reflecting their illiquidity.

The complaint alleges that plaintiff has owned 16,150 shares or 9 percent of the common stock of Weigel Broadcasting since 1966. It states further that on June 6, 1976, defendant J. W. O'Connor was a director of the Corporation and chairman of its board. O'Connor then owned 66,931 shares, or 37 percent of its common stock, and 298 shares, or 6½ percent of its preferred stock, and his son Kerby O'Connor owned 1,000 shares of the common. At the same time, defendant Howard Shapiro was president and a director of the Corporation, owning 54,391 shares, or 30 percent of the common stock.

The complaint states in general terms that the opportunity of publicly-held American corporations to acquire blocks of their outstanding shares at favorable prices "is a valuable corporate opportunity to be pursued for the benefit of the corporation and its non-selling shareholders" (Par. 6). It alleges that on June 7, 1976, the Corpora-

---

* The Honorable William J. Campbell, Senior District Judge of the Northern District of Illinois, is sitting by designation.

tion had the opportunity to purchase both lots of O'Connor common stock at $9 per share and J. W. O'Connor's preferred stock at $35 per share "on terms requiring a downpayment of only 29% of the total purchase price, the balance to be paid in five annual installments with interest not to exceed 8% per annum" (Par. 9). These terms were those granted on June 7 by O'Connor to Shapiro in an option for the purchase of the O'Connor shares. The complaint alleges that on January 17, 1977, Shapiro assigned this option to his wife, defendant Jacqueline Shapiro, who exercised it on February 3, 1977. Plaintiff also charged on information and belief that Howard Shapiro acquired additional common and preferred shares of stock at the above prices on June 28, 1977. According to the complaint, the Corporation had ample funds during this period to purchase the O'Connor and other stock and its fair market value was substantially in excess of the price requested by the O'Connors.

On December 8, 1977, plaintiff requested the corporate directors to sue the Shapiros and J. W. O'Connor so that the Corporation might recover the shares obtained by the Shapiros. The Board of Directors refused plaintiff's demand on January 27, 1978, and plaintiff filed this lawsuit a few days thereafter.

In April 1978, plaintiff moved to disqualify three lawyers and their firm [1] as attorneys for Mr. and Mrs. Shapiro. Shortly thereafter, defendants sought to depose plaintiff and his associate, Davide Tomei. On April 24, Judge Decker denied a motion by plaintiff to stay discovery pending a decision on the disqualification motion and directed discovery to proceed. Nevertheless, when plaintiff and Mr. Tomei appeared for their depositions, they refused to answer any questions "until present counsel for the Shapiros withdrew from these proceedings or are disqualified by order of the Court."

In October 1978, Judge Decker dismissed the complaint for failure to state a claim and simultaneously denied "without prejudice as moot" plaintiff's April 1978 motion to disqualify counsel. In his accompanying opinion, Judge Decker held that Illinois followed the common law rule that a corporate officer or director is free to deal in the corporation's stock as though he were a stranger to the corporation unless the corporation has a specific interest in acquiring the stock. Consequently, plaintiff filed an amended complaint a month thereafter. This pleading contained the following paragraphs relied upon by plaintiff to cure the defect Judge Decker found in the original complaint:

"5. Some time prior to March 15, 1968 defendants Shapiro and O'Connor, and members of their respective families, each acquired 63,646 shares of common stock, and 90 shares of preferred stock of the Corporation. As a result of the acquisition of said shares, Shapiro and O'Connor became the controlling stockholders of the Corporation, were elected to the Board of Directors thereof, and became fiduciaries for the benefit of the Corporation and its minority shareholders.

"6. On March 15, 1968 Sharpiro and O'Connor entered into a certain first refusal agreement respecting the shares of the Corporation which they, and the members of their respective families, owned as set forth in paragraph 5 above, or might thereafter acquire. The purpose and intended effect of said agreement was to prevent either Shapiro or O'Connor from willing his shares to the Corporation or to any third party, but to insure that if either sold his shares the other would be the purchaser. Thereafter, and continuously to and through February 1977, Shapiro and O'Connor continued to be directors and the controlling shareholders of the corporation.

"7. By virtue of the aforesaid first refusal agreement, and by virtue of their

---

1. The three lawyers are members of the law firm of Gottlieb and Schwartz, which serves as the Corporation's general counsel. The Corpo-

ration obtained separate trial counsel to represent it about a month after the filing of the complaint.

continuous control and domination of the Corporation, Shapiro and O'Connor knowingly and intentionally prevented the Corporation from adopting, pursuing, or effecting any corporate policy under which the Corporation might or would reacquire any of its outstanding shares. After March 15, 1968, Shapiro and O'Connor engaged in the practice of acquiring additional shares of the Corporation from time to time. Because of the aforesaid first refusal agreement and the control and domination of the Corporation by Shapiro and O'Connor, the Corporation was denied the opportunity to compete for and acquire any of these additional shares.

\* \* \* \* \* \*

"21. Acquisition by the Corporation of all of the O'Connor shares purchased by defendant Shapiro, and all of the units purchased from minority shareholders as alleged in paragraph 19 above would have been reasonably incident to the present or prospective operations of the Corporation. Purchase of said shares was the highest and best use of the Corporation's excess cash; based on its earnings per share anticipated and realized, the Corporation would have recovered its entire purchase price of $9 per share in the first three fiscal years after said purchases, but would have had the privilege in the case of the O'Connor shares of paying 71% of the purchase price in installments over a four year period at a sub-market interest rate. The investment return to the Corporation on the purchase of the O'Connor and tender offer stock, based on earnings per share then anticipated and actually realized, would have been 25% in 1976, 33% in 1977, and 42% in 1978. By contrast, the annual return which the Corporation actually realized on its excess cash was only 8% in 1976, 5% in 1977, and 5% in 1978. In addition, the Corporation's acquisition of the O'Connor shares and the minority shares acquired in the Shapiro tender offer would have enabled the

Corporation to avoid future dilution of common stock equity in conjunction with acquisitions and other transactions involving issuance of shares. The Corporation would have had such shares available for exchange for the Corporation's preferred stock, then having accrued, but unpaid dividends of $80 per share, thus eliminating more than $300,000 in accrued dividends with no dilutive effect on the common stockholders."

Plaintiff did not make any effort upon filing the amended complaint to renew his motion to disqualify defendants' counsel.

A fortnight after the receipt of the amended complaint, the district court filed a second memorandum opinion. The opinion held the amended complaint insufficient because the above "conclusory allegations \* \* \* do not allege any facts which would give rise to an obligation on the defendants to restrain [refrain] from dealing in stock of the corporation." The court reiterated the rule that directors and controlling stockholders are free to deal in the stock of a corporation "unless some unusual circumstance exists" and concluded that the amended complaint did not "allege any unusual circumstance sufficient to invoke an exception to the general rule." Therefore, judgment was entered dismissing the amended complaint with prejudice. At the same time, the court awarded the defendants $546.40 for attorney's fees and expenses incurred as a result of plaintiff's and his associate Davide Tomei's refusal to testify at their depositions. Plaintiff stood on his amended complaint and appealed. We affirm.

*Disqualification of Counsel for Shapiros*

██ Plaintiff's April 1978 motion to disqualify the law firm of Gottlieb and Schwartz and three of its members was grounded on allegations that the firm had served as regular counsel for the corporate defendant and that despite the formal alignment of the parties, Weigel Broadcasting Corporation was "in actuality" a plaintiff in this diversity suit.[2] In his first opin-

---

**2.** The Corporation was represented by different counsel about a month after this lawsuit was commenced.

ion, handed down on October 2, 1978, Judge Decker denied this motion "without prejudice as moot" because he had dismissed the original complaint, and therefore he did not discuss any of the arguments previously advanced by the parties affecting the motion. As a result, it is plain that the district court did not decide the merits of the question presented by the motion.[3] A determination of that sort would be required for his decision to be an appealable "final decision" under 28 U.S.C. § 1291 (*Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 89 L.Ed. 911), especially given the exceptional status of appeals from denials of disqualification motions. *Schloetter v. Railoc of Indiana, Inc.*, 546 F.2d 706, 709 (7th Cir. 1976); Comment, The Appealability of Orders Denying Motions for Disqualification of Counsel in the Federal Courts, 45 U.Chi.L.Rev. 450, 452–456 (1978).

Even assuming that Judge Decker's October 2, 1978, order was a final decision, plaintiff failed to take his appeal within the 30 days allowed by Rule 4 of the Rules of Appellate Procedure. As noted, plaintiff did not renew his disqualification motion after the trial court on November 6, 1978, granted him leave to amend his original complaint. Since the 30-day period runs from this November 6 order (Federal Rule of Appellate Procedure 4(a)), his December 8 appeal was clearly too late to contest the October 2 order in which the denial of the disqualification motion appears. Nor is it tenable to argue, as plaintiff does in his reply brief, that the filing of the amended complaint automatically revived the disqualification motion and that the final judgment on that issue occurred only with the November 17, 1978, dismissal of the amended complaint. That argument is tantamount to asserting that although the disqualification motion was moot on October 2 when the district court explicitly denied it, yet it became final on November 17 when the court did not even mention it!

Finally, the motion to disqualify is a live issue only if the cause of action itself survives. As a substantive matter, the motion depends on some adverse relationship between defendants and the Corporation, and the dismissal of each complaint eliminates any evidence of such a relationship. In simple procedural terms, moreover, the dismissal of the amended complaint would render any opinion on the merits of the disqualification motion merely advisory. Since we are affirming the district court's final judgment order dismissing this case, the motion to disqualify counsel remains moot at this time.

*Assessment of Attorneys' and Court Reporter's Fees*

In its November 17, 1978, final judgment, the district court held that the Shapiros should recover $546.40 from the plaintiff under Rule 37 of the Federal Rules of Civil Procedure because of the refusal by plaintiff and his associate Davide Tomei to answer any questions at their depositions. Although the defendants sought $1,588.90 in expenses, the district judge reduced this amount to $400 for legal fees resulting from the failure to testify and $146.40 for the court reporter's fee. Since the district judge had denied plaintiff's motion to stay discovery and had directed that all discovery proceed despite the pending disqualification motion, there was no legitimate excuse for plaintiff's and Mr. Tomei's conduct of May 10 and 15, 1978, when their respective depositions commenced. The sanction imposed not only was supported by Rule 37(b)(2) of the Federal Rules of Civil Procedure but is arguably justified by Rule 37(d) as well. See 4A Moore's Federal Practice (2d ed.) ¶ 37.01[8], p. 37–25; ¶ 37.-03[2.–1]; ¶ 37.03[2.–7]; ¶ 37.05, pp. 37–90 and 37–106. Defendants' counsel submitted detailed affidavits setting forth their fees, copies of time records and court reporter bills that amply supported the modest award allowed by the court below.

3. It is of course immaterial that several months earlier the district judge remarked that it was his "tentative conclusion" that the disqualifica-

tion motion would be granted in the event the complaint were upheld (May 30, 1978, Tr. 52).

### Corporate Directors Are Ordinarily Not Liable for Purchasing Stock in Their Corporation

This being a diversity case, we must look to Illinois law to determine whether the individual defendants wrongfully seized a corporate opportunity in purchasing stock in the Corporation. Under Illinois law, it is settled that a corporation's officers and directors are free to deal in the corporation's stock unless the corporation has expressed an interest in purchasing such stock or the directors' purchase would otherwise thwart the corporation's plans. The most recent restatement of this rule that we have found appears in *Voss v. Lakefront Realty Corp.*, 48 Ill.App.3d 56, 66, 8 Ill.Dec. 109, 117, 365 N.E.2d 347, 355 (1st Dist.1977), in which the court stated that "[a] corporate director is permitted to purchase stock of the corporation with which he is affiliated as freely and on the same terms as if he were a stranger to the corporation."[4] Among other cases, the *Voss* court cited *Northwestern Terra Cotta Corp. v. Wilson*, 74 Ill.App.2d 38, 46, 219 N.E.2d 860, 864 (1st Dist.1966), which states the following qualification of this rule:

> "Whether in any case there is a duty upon a corporate official to refrain from purchasing property for himself depends upon whether the corporation has an interest, actual or in expectancy, in the property, or whether the purchase of the property by the officer or director may hinder or defeat the plans and purposes of the corporation in the carrying on or development of the legitimate business for which it was created" (citations omitted).[5]

In short, a director may purchase stock unless either some policy indicating corporate interest or some other unusual circumstance suggests otherwise. Thus *Northwestern Terra Cotta* found for the defendant directors in that case because the corporate plaintiff was not interested in acquiring its stock at the $7 per share paid by the directors. Similarly, the *Voss* court, in upholding the right of the defendants to purchase corporate stock, specifically distinguished *Faraclas v. City Vending Co.*, 232 Md. 457, 194 A.2d 298 (1963), because in that case the corporation's board of directors had unanimously voted for the corporation to purchase its stock (48 Ill.App.3d at 66, 8 Ill.Dec. 109, 365 N.E.2d 347).[6]

To avoid the foregoing cases, plaintiff relies heavily on *Kerrigan v. Unity Savings Association*, 58 Ill.2d 20, 317 N.E.2d 39 (1974). However, that case did not involve or even refer to the general rule that officers and directors are free to trade in stock of their corporation unless the corporation has expressed an interest in acquiring its own stock.[7] The *Kerrigan* opinion does contain a dictum that the doctrine of business opportunity necessarily entitles the corporation to decide "whether it wishes *to enter into a business* that is reasonably incident to its present or prospective operations" (58 Ill.2d at 28, 317 N.E.2d at 43). But this case does not involve entry into a business. Moreover, the amended complaint does not show that the purchase of its stock by the Corporation would have been "reasonably incident to its present or prospective [television] *operations*" despite the speculative hindsight offered in paragraph 21. Plaintiff has been unable to cite any case in which a stock reacquisition is so viewed because under such a theory a director would scarcely ever be able to purchase shares in the corporation he serves. The law of course is to the contrary.

**4.** The rule is stated in the same terms in *Melish v. Vogel*, 35 Ill.App.3d 125, 135, 343 N.E.2d 17 (1st Dist.1976), in which the court ordered judgment to be entered for the defendant director.

**5.** *Burg v. Horn*, 380 F.2d 897, 899 (2d Cir. 1967), is to the same effect.

**6.** *Kelly v. 74 & 76 West Tremont Avenue Corporation*, 4 Misc.2d 533, 151 N.Y.S.2d 900, af- firmed, 3 N.Y.2d 973, 169 N.Y.S.2d 39, 146 N.E.2d 795 (mem. decision 1957), on which plaintiff relies, is also distinguishable because the corporations in *Kelly* had authorized the defendants to purchase the stock for the corporations and the defendants wrongfully seized the corporate opportunity for themselves.

**7.** The general rule is so described in 3 Fletcher, Cyclopedia Corporations (perm. ed.) § 862.

■ Despite these principles, plaintiff seeks to rely on an amended complaint that not only fails to show that the Corporation had any interest in purchasing its own stock, but in fact indicates that since 1968 Weigel Broadcasting did not purchase any of its own stock and has had no share reacquisition policy (Par. 7). To cure the defect, plaintiff argues that defendants prevented the Corporation from buying its own stock. Whenever directors buy stock, however, their action will automatically prevent the corporation from doing so. The rule of the *Voss* line of cases nevertheless allows them to make the purchase. In addition, as plaintiff's counsel admitted at the oral argument, defendant O'Connor could lawfully have made a free gift of his stock to the Shapiros. It follows that it was equally lawful for him to sell them his stock in the Corporation.

Like the district court, we have scanned the four paragraphs that principally distinguish the amended complaint (pp. 270–271, *supra*). Even interpreted liberally, they do not allege that the Corporation had any interest in purchasing this stock or that the Shapiros' purchase "may hinder or defeat the plans and purposes of the corporation in the carrying on or development of the legitimate business for which it was created." *Northwestern Terra Cotta Corp. v. Wilson, supra,* 74 Ill.App.2d at 46, 219 N.E.2d at 864. The stock option or first refusal agreement described in paragraph 6 of the amended complaint (p. 270, *supra*) is valid under Illinois law [8] and cannot be the basis of a claim that defendants interfered with corporate plans. Therefore, the general Illinois rule is applicable, and the district court rightly held that the amended complaint must be dismissed.

Judgment affirmed.

---

8. *E. g., Galler v. Galler,* 32 Ill.2d 16, 23–25, 203 N.E.2d 577 (1954). See 12 Fletcher, *op. cit.,* § 5461.6.