SHARON STEEL CORPORATION,
Plaintiff,

v.

The CHASE MANHATTAN BANK, N. A.,
Manufacturers Hanover Trust Company
and United States Trust Company of
New York, Defendants.

MANUFACTURERS HANOVER TRUST
COMPANY, Third-Party Plaintiff,

v.

UV INDUSTRIES, INC., Third-Party
Defendant.

CONNECTICUT MUTUAL LIFE
INSURANCE COMPANY, et al.,
Intervenors,

v.

SHARON STEEL CORPORATION,
Plaintiff,

and

UV Industries, Inc., Third-Party
Defendant.

UNION PLANTERS NATIONAL BANK
OF MEMPHIS, as Trustee, Plaintiff,

v.

UV INDUSTRIES, INC. and David Finkel-
stein, Arthur R. Gralla, Martin Horwitz,
Edwin Jacobson, Theodore W. Kheel,
and Paul Kolton, as Trustees of the UV
Industries, Inc. Liquidating Trust, De-
fendants,

and

Sharon Steel Corporation, Defendant.

Nos. 79 Civ. 6996 (HFW), 80 Civ.
5341 (HFW).

United States District Court,
S. D. New York.

May 29, 1981.

Shearman & Sterling, New York City, for Sharon Steel Corp.; Stephen A. Oxman, Francis X. Markey, Robert J. Hausen, William J. F. Roll, III, New York City, of counsel.

Shea & Gould, New York City, for UV Industries, Inc.; Bruce A. Hecker, Ronald H. Alenstein, Ronald D. Lefton, New York City, of counsel.

Dewey, Ballantine, Bushby, Palmer & Wood, New York City, for Chase Manhattan Bank; Robert C. Myers, John F. Collins, Deborah B. Zwany, New York City, of counsel.

Kelley, Drye & Warren, New York City, for Manufacturers Hanover Trust Co.; Robert Ehrenbard, Edward Roberts, III, William A. Krohley, Paul Lubetkin, New York City, of counsel.

Rosenman Colin Freund Lewis & Cohen, New York City, for Connecticut Mutual Life Ins. Co., et al., Intervenors; Frank H. Wohl, Nadia C. Adler, Steven F. Miller, Lee A. Barkan, Donald M. Spector, Daniel R. Benson, New York City, of counsel.

Donovan, Leisure, Newton & Irvine, New York City, for Union Planters Nat. Bank of Memphis; J. Peter Coll, Jr., and Clarence Otis, Jr., New York City, of counsel.

## OPINION

WERKER, District Judge.

Plaintiff, Sharon Steel Corporation ("Sharon"), commenced this action against defendants, The Chase Manhattan Bank, N.A. ("Chase"), Manufacturers Hanover Trust Company ("Manufacturers"), and United States Trust Company of New York ("U.S. Trust").[1] Manufacturers impleaded

---

**1.** All claims and counterclaims pending between and among Sharon, UV and U.S. Trust were dismissed with prejudice pursuant to stipulation of the parties on May 11, 1981. Be-

UV Industries, Inc. (UV) as a third-party defendant, and the holders of certain UV debentures (the "Intervenors") intervened, asserting claims against both Sharon and UV. Union Planters National Bank of Memphis ("Union Planters") subsequently commenced a separate action against UV, the Trustees of the UV Industries Inc. Liquidating Trust, (the UV Trustees) and Sharon Steel Corporation. The Union Planters suit has been consolidated with the main action for all purposes.

This action was tried before a jury but, at the conclusion of plaintiff's case, the Court, in an opinion dated May 11, 1981, directed a verdict dismissing each of Sharon's causes of action against Chase, Manufacturers, the Intervenors and Union Planters. On May 12, 1981, the banks and the Intervenors moved for summary judgment on their claims against Sharon, UV, and the UV Trustees. The findings made in the May 11, 1981 opinion will not be repeated here. Suffice it to say that they are incorporated herein by reference and knowledge of them is assumed.

Manufacturers has asserted four claims against UV. Its first claim is that UV has breached the April Agreement by failing to pay the 8⅞% debentures, failing to satisfy and discharge the Indenture, and failing to come forward with a proposal for satisfaction and discharge of the debt that complied with the terms of the Indenture. Its second claim is that UV is in default under the Indenture. Manufacturers' third claim is that UV has violated Maine law. Its fourth claim is for reimbursement and indemnification of expenses incurred by it in connection with its administration of the trust, including costs and expenses incurred in this litigation, pursuant to § 7.06 of the Manufacturers Indenture. Each of the above claims also has been asserted against Sharon, apparently on the basis that Sharon assumed UV's liabilities relating to or arising from the Indenture, the 8⅞% debentures and the April Agreement. In addi-

tion, Manufacturers has asserted one claim against Sharon alone. It claims that Sharon holds assets received from UV in trust for Manufacturers as indenture trustee for the 8⅞% debentures.

Chase has asserted claims against UV, the UV trustees and Sharon. Its first claim is that UV has breached the April Agreement by failing to redeem the 5⅜% debentures and the City of Port Huron bonds, failing to satisfy the 1965 and 1968 Indentures, and failing to come forward with a proposal to do so. Its second claim is that UV is in default under the 1965 Indenture and the Port Huron Lease Guaranty. Chase's third claim is that UV has violated Maine law. Chase has asserted each of the above claims against the UV Trustees and Sharon on the ground that they have assumed UV's liabilities and obligations with respect to the Indentures and April Agreement. In addition, Chase claims that the UV Trustees and Sharon hold assets received from UV in trust for Chase as indenture trustee for the 5⅜% debentures and Port Huron Bonds. Finally, Chase requests reimbursement of its costs and expenses including reasonable attorneys' fees incurred in this litigation.

Union Planters has asserted claims against UV, the UV Trustees and Sharon. Its first claim is that UV, the UV trustees and Sharon have breached the April Agreement by failing to pay or agreeing to redeem the County of Itawamba bonds, failing to satisfy and discharge the County of Itawamba Indenture, and failing to come forward with a proposal to do so. Union Planters' second claim is that UV and the UV Trustees are in default under the County of Itawamba Indenture and the Lease Guaranty. Its third claim is that UV and the UV Trustees have violated Maine law. Its fourth claim is that Sharon holds assets received from UV that should have been tendered to Union Planters as Indenture trustee for the County of Itawamba bonds. Its final claim is that UV, the UV Trustees

cause the caption of the action has not yet been amended to reflect this, U.S. Trust must continue as a named defendant. Despite the settle-

ment, reference to U.S. Trust in the course of this opinion was necessary for full development of the facts.

and Sharon must pay or reimburse Union Planters for its services and expenses including counsel fees pursuant to § 1102 of the County of Itawamba Indenture.

The Intervenors have asserted claims against UV and Sharon. Their first claim is that UV is in default under the Manufacturers Indenture and the 8⅞% debentures. Their second claim is that UV and Sharon have violated Maine law. Their third claim is that UV's purported assignment and Sharon's purported assumption of UV's liabilities and obligations under the Indenture and debentures are invalid. The Intervenors fourth claim is that Sharon holds all assets received from UV in trust for the Intervenors and other members of the class of 8⅞% debentureholders. The Intervenors also seek recovery of their costs and expenses, including attorneys fees incurred in this litigation although the basis for this claim and the party or parties against whom it is asserted have not been specified.

The foregoing claims present six issues. The first is whether there has been a breach of the April Agreement; second, whether there has been a default under the respective Indentures; third, whether a violation of Maine law has occurred; fourth, whether the trustee banks and the Intervenors are entitled to attorneys' fees; fifth, whether the UV Trustees or Sharon must be deemed to hold assets received from UV in trust for the trustee banks and their debentureholders and bondholders; sixth, whether UV's purported assignment and Sharon's purported assumption of UV's liabilities and obligations under the Indentures and debentures is invalid.

### SUMMARY JUDGMENT

■ On a motion for summary judgment, a Court's function is not to adjudicate issues of fact, but to " 'determine whether there are issues to be tried.' " *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978), (quoting *American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount Theatres, Inc.*, 388 F.2d 272, 279 (2d Cir. 1967), *cert. denied*, 404 U.S. 1063, 92 S.Ct. 737, 30 L.Ed.2d 725 (1972).

In determining whether genuine issues of material fact exist, the Court must "resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Flli Moretti Cereali v. Continental Grain Co.*, 563 F.2d 563, 565 (2d Cir. 1977). The burden is on the moving party to show the absence of dispute as to any material fact. *Id.* at 565. Viewing the facts in the light most favorable to Sharon and UV, it nevertheless appears that no genuine issue exists as to the material facts, and disposition of this action by summary judgment is warranted.

### DEFAULT UNDER THE INDENTURES

On December 24, 1979, Chase gave notice to UV that an event of default had occurred under the 5⅝% Indenture and the City of Port Huron Indentures. The event of default identified by Chase in each of the notices was UV's failure to observe the successor corporation provisions of the Indentures and Lease Guaranty in connection with UV's sale of assets to Sharon on November 26, 1979. The notices further stated that if the condition continued for thirty days after receipt of the notices of default, an Event of Default would occur under each Indenture.

Manufacturers, by letter dated December 24, 1979 also gave notice to UV that it considered UV's sale of assets to Sharon violative of the successor corporation provisions of the Manufacturers Indenture. The notice further stated that if the condition giving rise to the default continued for 90 days from the date of the letter, it would become an Event of Default under the Indenture.

By letter dated July 24, 1980, Union Planters gave notice to UV that a default had occurred under the Indenture by reason of UV's failure to comply with the provisions of the County of Itawamba Lease Guaranty in connection with its disposition of assets to Sharon on November 26, 1979. The notice further stated that if the condition continued for 30 days after receipt of the notice, it would become an Event of Default under the Indenture.

In an opinion dated May 11, 1981, this Court found that Sharon did not purchase "all or substantially all" of the assets of UV and therefore did not qualify as a successor corporation within the meaning of the Indentures. Based upon this finding and an examination of the Indentures in question, I now conclude that UV was in default under each of the Indentures and Lease Guaranties when it failed to cure the defaults after notice of default was given by the trustees. Thus, UV was in default under the 5⅝%, the City of Port Huron and the County of Itawamba Indentures thirty days after it received notice of default from the trustees and UV was in default under the 8⅞% debentures 90 days after notice of default was given by Manufacturers. In addition, since Sharon did not qualify as a successor obligor, UV's purported assignment of its liabilities and obligations under the Indentures and debentures, and Sharon's purported assumption of those liabilities and obligations were invalid.

## APRIL AGREEMENT CLAIM

The trustees claim that the April Agreement has been breached as a result of UV's failure to pay the debentures and bonds, its failure to satisfy and discharge the Indentures under which they were issued, and its failure to come forward with a proposal for satisfaction and discharge of the debt.

UV contends that its only obligation under the provision of the April Agreement requiring it to present a proposal for satisfaction and discharge of the Indentures, was to present in good faith a proposal for the payment of its debt. It claims that it fulfilled this obligation when it presented plans for the net defeasance of the indebtedness to the trustees on July 26, 1979. According to UV, it was under no obligation to proffer a proposal that complied with the redemption provisions of the Indentures and the April Agreement nowhere stated that the proposal had to comply with the Indentures.

The Intervenors and trustees argue that under the terms of the April Agreement, UV's proposals had to be proposals to pay the indebtedness and satisfy and discharge the Indentures. The only way of doing this, according to the Intervenors and trustees, was in the manner specified in the Indentures.

The April Agreement provides:

(1) . . . [UV] shall present to each of the Corporate Trustees within 90 days after the date hereof [April 26, 1979] a proposal for the payment of its respective issue of Public Indebtedness and for satisfaction and discharge of [its] obligations under its respective Public Indebtedness Indenture unless previously satisfied and discharged.

Although UV contends that compliance with the terms of the Indentures was neither required nor necessarily expected of it, I find that such compliance was in fact expected by the parties and required under the contract. First, the language of the Agreement required a proposal for satisfaction and discharge of UV's obligations under the Indentures. Since the Indentures specify the manner in which they may be satisfied and discharged, it follows that any proposals for satisfaction and discharge would have to conform with the terms of the Indentures. Second, the deposition testimony of Timothy C. Crane, a Vice-President in the Corporate Trust Department at Manufacturers, demonstrates that the trustees' position was "that the debentures should be treated in a manner which was consistent with the terms of the indenture . . . ." Affid. of Bruce Hecker, sworn to May 15, 1981, Ex. 6.

The next issue is whether the proposals presented by UV on July 26, 1979 complied with the terms of the Indentures. The proposals presented by UV on July 26, 1979 provided for a net defeasance or advanced refunding of the indebtedness. The evidence at trial demonstrated that Chase and Manufacturers both rejected the proposals presented by UV on July 26, 1981 because, in their opinion, the proposals did not comply with the terms of the 5⅝% and 8⅞% debentures. Tr. at 521–24, 997. Although Chase and Union Planters expressed interest in UV's proposal for advanced refund-

ing of the City of Port Huron and the County of Itawamba Indentures, respectively, neither proposal ever was implemented by UV.

■ The provisions of the Indentures concerning satisfaction and discharge of the Indentures make clear that in order to satisfy and discharge its obligations under the 5⅜% and 8⅞% indentures, UV was required to immediately pay the principal, interest and premium, if any, due on the debentures. Under the City of Port Huron and the County of Itawamba Indentures, UV was required to immediately pay the principal, interest and premium, if any, on the bonds or to undertake an advance refunding of the bonds. *See* Chase 5⅜% Indenture, Article XV; Manufacturers Indenture, Article XII; City of Port Huron Indenture, Article IX; County of Itawamba Indenture, Article IX. As noted above, the proposals presented by UV on July 26, 1979, did not provide for immediate payment. Consequently, I find that UV was in breach of the April Agreement on July 26, 1979 when it failed to present a proposal for the immediate payment of the 5⅜% and 8⅞% debentures.

The second aspect of the breach asserted by the Intervenors and trustees is the transfer of the Fund to Sharon on November 26, 1979. The trustees and the Intervenors contend that this action by UV violated the April Agreement because UV had no right to transfer the Fund and because "in transferring the fund, UV took no steps to assure that the fund would not be used for any purpose other than for payment, satisfaction and discharge of the indebtedness." UV, on the other hand, contends that the language of the April Agreement "seems to contemplate" a transfer such as the one made to Sharon.

The April Agreement provides:
(c) [UV] shall only use or permit the use of the cash or permitted investments in the Accounts for payment of any Public Indebtedness or satisfaction and discharge of any of the above-described Indentures; . . .

■ I find that the language of the foregoing provision did not preclude a transfer of the Fund so long as such transfer was on the condition that the Fund would only be used for the payment of UV's public debt and for satisfaction and discharge of the Indentures. This proviso was not set forth in either the Purchase Agreement or Assumption Instrument and Sharon subsequently repudiated the agreement and sought to divert the use of the Fund to its own benefit. This conduct constituted a breach of the agreement by UV and Sharon. In addition, UV informed the trustees that it had no further obligations under the Indentures once Sharon had assumed its debt. Tr. at 523–24. While it may have been permissible for UV to have assigned its rights and delegated its obligations under the April Agreement to Sharon, such delegation was ineffective to release UV from liability to its creditors with respect to these obligations because the creditors' consent to the delegation was never obtained. *See Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918 (2d Cir. 1977). Consequently, the entire series of events concerning UV's sale of assets to Sharon without specifically providing for Sharon's assumption of UV's liabilities under the April Agreement, UV's repudiation of further responsibility under the Agreement and Sharon's repudiation of UV's obligations under the Agreement, constituted a breach of the April Agreement. Thus, the April Agreement was breached for the first time with respect to the City of Port Huron and County of Itawamba Indentures on November 26, 1979.

### THE MAINE LAW CLAIMS

The trustees and the Intervenors contend that UV violated the law of the state of Maine when it made a liquidating distribution of $18 per share on April 30, 1979 because UV did not redeem the bonds prior to that time. According to the Intervenors and trustees, the "provide for" language in the Maine statute "is not intended to alter contractual agreements among parties that specifically set forth the manner of payment, satisfaction and" discharge of the

obligations of one of the parties. UV and Sharon contend that the April 30th distribution did not violate Maine law (1) because it retained cash and securities in an amount far in excess of its indebtedness, even after it made the distribution and therefore, the rights of its creditors were not impaired and (2) because the $155 fund established pursuant to the April Agreement constituted adequate provision for payment of its debts.

Under Maine law:

After paying or adequately providing for the payment of all its obligations, the corporation shall distribute the remainder of its assets, either in cash or in kind, among its shareholders according to their respective rights and interests.

13A Me.Rev.Stat. § 1106.4.

There is little decisional law interpreting the language "after paying or adequately providing for the payment of all its obligations" utilized in § 1106.4. UV suggests that this phrase permits a dissolving corporation to either pay or provide for the payment of its obligations in any commercially reasonable manner that does not substantially increase the risk to creditors. According to the affidavit of David J. Halperin, both the set aside of funds in an amount sufficient to satisfy obligations and the express assumption of the obligations by a solvent public corporation would satisfy this requirement. Affid. of David J. Halperin, sworn to March 12, 1981 at ¶¶ 5–7.

The banks and the Intervenors contest this interpretation. They contend that the Maine provision must be interpreted to require payment to creditors before any distribution to shareholders. According to the trustees and the Intervenors, the "adequate provision for" language of the statute is designed to deal only with contingent liabilities, not those that are certain.

It is hornbook law that corporate "property must first be appropriated to payment of corporate debts and liabilities before any distribution among stockholders. Thus, ... the modern corporation statutes generally require that the debts and liabilities of the corporation to its creditors must be paid or adequately provided for in the dissolution proceedings before the distribution of corporate assets to stockholders." Richard P. Eickhoff, 16A *Fletcher Cyclopédia of the Law of Private Corporations* § 8219 (perm. ed. 1979); *see In re Baldwin Trading Corp.*, 8 N.Y.2d 144, 168 N.E. 383, 202 N.Y.S.2d 312 (1960); *Bartlett v. Drew*, 57 N.Y. 587 (1874).

The issue in this case presents the limited question of whether a corporation may set aside funds to provide for payment of its outstanding debts and make a partial liquidating distribution to shareholders prior to the completion of its dissolution. This question is not resolved by reference to settled law and must be examined in light of the purpose of the statutory provision.

The purpose of provisions requiring payment to creditors before distribution of corporate assets to shareholders is to preserve "the existing rights of priority of all creditors" of a corporation that is winding up its affairs. *Cobb v. Camden Savings Bank*, 106 Me. 178, 76 A. 667, 669 (Sup.Ct. 1909). In this case, the fund created pursuant to the April Agreement accomplished this purpose. The fund was to be used only for the payment of UV's public indebtedness and satisfaction and discharge of the Indentures. The fact that the "provision for" language utilized in the statute was designed primarily to establish a method by which corporations could arrange for the payment of contingent liabilities, *see Bujega v. Davis*, 34 Misc.2d 276, 228 N.Y.S.2d 216 (Sup.Ct. Kings County 1962), does not require a different result. Therefore, I hold that the fund sufficed to preserve the priority of UV's creditors to payment of its outstanding obligations and that Maine law was not violated when UV made the partial liquidating distribution to its shareholders on April 30, 1979.

## CONSTRUCTIVE TRUST AND RESTITUTION

The next issue that must be addressed is whether Sharon must be deemed to be holding the $155 million Fund re-

ceived from UV in trust for the trustee banks and their debentureholders and bondholders. "[A] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." A. Scott, 5 *The Law of Trusts* § 462 at 3413 (3d ed. 1967); *United States v. Augspurger*, 452 F.Supp. 659 (W.D.N.Y. 1978), *motion for reconsideration denied*, 477 F.Supp. 94 (W.D.N.Y.1979). Such a trust arises whether or not the acquisition of title to the property was wrongful, *id.* at § 462.2, and whether or not a fiduciary relationship existed between the parties. *See Cherno v. Dutch American Mercantile Corp.*, 353 F.2d 147 (2d Cir. 1965).

The Intervenors and trustees contend that Sharon acquired assets from UV that Sharon knew should have been tendered to the Indenture Trustees for satisfaction and discharge of UV's obligations under the Indentures. It is clear in this case that Sharon knew or, at the very least, had notice of the claims of the trustees to the fund that it purchased. Consequently, it would be inequitable for Sharon to retain title to the Fund now that it has been determined that it is owing to the Indenture Trustees on behalf of their debentureholders and bondholders. Thus, a constructive trust will be impressed to preserve the rights of those entitled to the Fund. *See Coane v. American Distilling Co.*, 298 N.Y. 205, 81 N.E.2d 90 (1948).

In addition to the imposition of a constructive trust, the Intervenors and trustees seek restitution of the approximately $50,000 per day interest earned on the $155 million Fund from the date that the indebtedness was required to be redeemed. Sharon contends that the trustees and Intervenors are not entitled to this interest. According to Sharon, "each of the debentures . . . specifically provides that interest shall be paid at the rate borne by the debentures until the principal has been paid" and the trustees and Intervenors are not entitled to interest in excess of that provided for in the Indentures.

Sharon's contention must be rejected. At issue here is not the rate of interest to be paid on the debentures. Rather, it is the windfall interest which was earned on a separate fund, the proceeds of which were to be used to satisfy the claims of UV's public bondholders. In my opinion, when the provisions of the April Agreement establishing this Fund were breached by UV and Sharon, they no longer were entitled to receive the interest accruing on the deposited funds. In addition, had the debentures been discharged in the manner required by the April Agreement, this money would have been realized by the debentureholders and bondholders. Thus, the elements necessary to establish a claim for unjust enrichment are present in this case. Sharon and UV were enriched at the expense of the Intervenors and the Trustees and the circumstances are such that in equity and good conscience Sharon and UV should make restitution of the amounts received. *Chase Manhattan Bank (National Association) v. Banque Intra, S.A.*, 274 F.Supp. 496 (S.D.N.Y.1967).

## ATTORNEYS' FEES

The trustees and the Intervenors have requested that UV and Sharon be directed to pay or reimburse them for their costs and expenses including attorneys' fees. The trustees have asserted their claims on the basis of clauses in the Indentures which specifically provide for reimbursement of the trustee for all reasonable expenses, advances and disbursements of the Trustee including the reasonable compensation and expenses and disbursements of its counsel. Chase 5⅝% Indenture, § 10.06; Manufacturers Indenture, § 7.06; City of Port Huron Indenture, § 1102; County of Itawamba Indenture, § 1102. Sharon has not objected to these claims. Sharon, however, has objected to the payment of the Intervenors costs and expenses including attorneys' fees, incurred in connection with this litigation.

Sharon contends that an award of attorneys' fees to the Intervenors would contravene the general rule that a prevailing liti-

gant is not entitled to collect a reasonable attorneys' fee in the absence of a specific statutory provision entitling them to such fee. The Intervenors contend that they are entitled to these fees because they "took a substantial role in this litigation [and] [i]n doing so, they incurred many expenses which . . . would have been the responsibility of Manufacturers."

The Intervenors reasoning is unpersuasive with respect to the claims asserted under the Indentures. Manufacturers was actively involved in representing the rights of the holders of the 8⅞% debentures in this litigation. It was the Intervenors voluntary decision to intervene in this litigation. There is no reason to now require Sharon to pay the fees of Manufacturers as well as those of the debentureholders who decided to intervene. In addition, such an award has no foundation in the Manufacturers Indenture.

With respect to the claims made under the April Agreement and the award of restitution, however, I find that counsel for the Intervenors may be entitled to an award of attorneys' fees. This would depend upon the benefit conferred upon the class by the actions of its attorneys. In order to ascertain what that benefit may be, the proportionate benefit received by the holders of the 8⅞% debentures must be assessed. *See Detroit v. Grinnell Corp.*, 495 F.2d 448, 468–470 (2d Cir. 1974).

## REDEMPTION PREMIUM

The Intervenors and trustees assert that the satisfaction and discharge provisions of the Indentures require that the debentures and bonds be redeemed for principal, interest and premium. Sharon contends that a redemption premium is not due because by declaring defaults, the trustees have accelerated the maturity of UV's public debt and the redemption is involuntary. Thus, according to Sharon, only principal and interest are due under the Indentures.

Each of the Indentures contain a provision under which UV at any time could elect to redeem the debentures for princi-

pal, interest and premium, if any. The trustees and Intervenors argue that UV's decision to embark upon a liquidation plan and sell its assets provides the requisite voluntariness.

After an examination of the redemption and default provisions of the Indentures, I find that the default provisions are controlling in this situation and that they do not provide for redemption premium. The redemption provisions of the Indentures state rather generally that the debentures may be redeemed at the option of the company at any time after a certain date and set forth the procedures to be followed for redemption. In contrast to this provision setting forth in general terms the right of the obligor to redeem the debentures, the default provisions specifically provide for what constitutes an event of default and the remedies available to the trustees and bondholders upon such default. Thus, each Indenture provides that the failure to observe any of the conditions of the Indenture constitutes an event of default and sets forth the action that may be taken by the trustees and debentureholders upon the default. In this case, the trustees declared defaults under each of the Indentures because of UV's failure to comply with the successor corporation provisions of the Indentures in connection with its sale of assets to Sharon. When UV failed to cure the default within the time period specified in each Indenture, the remedy provided to the trustees and debentureholders under the default provisions was a declaration that the principal of all the debentures then outstanding and the interest accrued thereon was immediately due and payable without premium.

Because the default provisions provide with specificity the circumstances constituting defaults under the indentures and also provide the rights of the trustees and bondholders upon such default, I find that they must control in this situation. A significant factor contributing to my decision is the fact that the default provisions state that any failure to comply with the provisions of the Indenture constitutes an event of de-

fault. It is clear from this language that the failure to comply may be involuntary or the result of a voluntary act of the debtor corporation. Since the remedies for such a voluntary default are specifically elaborated, it would do violence to the principle that specific provisions of a contract should prevail over general ones to hold that the redemption provisions rather than the default provisions apply in this situation. In addition, a contract should be considered as a whole with every provision to be given effect if a reasonable meaning, not inconsistent with the other provisions can be accorded to it. *See* J. Calamari & J. Perillo, *The Law of Contracts* ¶ 3–11. Thus, the trustees and the Intervenors argument that redemption premiums are due must be rejected.

## CONCLUSION

Based upon the foregoing, I conclude that there has been a default under the Indentures and Lease Guaranties entitling the trustees and their bondholders and debentureholders to immediate payment of the debentures with accrued interest only. Pre-judgment interest at the rate of 6% per annum is to run from January 24, 1980 with respect to the 5⅜% Indenture and the City of Port Huron Indenture, from March 24, 1980 with respect to the Manufacturers Indenture, and from August 24, 1980 with respect to the County of Itawamba Indenture.

In addition, I conclude that the April Agreement was breached by UV, that Sharon now holds the $155 million Fund as constructive trustee for the Indenture trustees and the bondholders and debentureholders, and that the trustees and the bondholders and debentureholders are entitled to recover the interest earned on the Fund by UV and Sharon from the date on which the April Agreement was breached with respect to the various Indentures. In addition, prejudgment interest is to run at the rate of 6% per annum on the interest earned by UV and Sharon from July 26, 1979 with respect to the Chase 5⅜% Indenture and the Manufacturers Indenture and from November 26,

1979 with respect to the County of Itawamba and the City of Port Huron Indentures. *See Newburger, Loeb & Co. v. Gross,* 611 F.2d 423, 433–34 (2d Cir. 1979).

I further conclude that the trustees are entitled to recover the reasonable costs and expenses of this action including a reasonable attorneys' fee and that the Intervenors are entitled to attorneys' fees with respect to the restitution of the interest earned by Sharon and UV on the $155 million Fund to the extent that they demonstrate that they are so entitled.

In addition, UV is enjoined from making further liquidating distributions to its shareholders during the pendency of any appeals which may follow in this action. Finally, during any appeals which may ensue in this action, the $155 million Fund is to be held to the credit of this action and the trustees and Intervenors in the accounts and in the securities in which it is now held. The amount of restitution and interest is to be computed and deposited in Court to the credit of this action with instructions to invest in certificates of deposit or treasury bills. When such deposits are made, the need for a supersedeas bond will be obviated and consequently, will not be required.

Submit judgment on notice.

SO ORDERED.