Robert BRAND, Plaintiff-Appellee,

v.

Herbert BRAND, Defendant-Appellant.

No. 488, Docket 86–7571.

United States Court of Appeals, Second Circuit.

Argued Dec. 10, 1986.
Decided Jan. 27, 1987.

Guy L. Heinemann, New York City, for plaintiff-appellee.

Herbert Brand, Yaphank, N.Y., defendant-appellant pro se.

Before KAUFMAN, TIMBERS and MAHONEY, Circuit Judges.

TIMBERS, Circuit Judge:

Appellant Herbert Brand ("appellant" or "Herbert") appeals pro se from a judgment entered June 16, 1986 in the Eastern District of New York, Charles P. Sifton, *District Judge*, imposing a constructive trust for the equal benefit of Herbert and Robert Brand, the two sons of Anton Brand, on certain assets held by appellant and directing an accounting by appellant with respect to his handling of those assets.

The judgment appealed from was entered on the court's findings of fact and conclusion of law. The court held that appellant had promised his father to preserve during the father's lifetime certain assets which, on his death, would constitute his estate; that the father, in reliance on the promise, had transferred to appellant title to, or the interest in, almost all of his assets; and that appellant's breach of the promise resulted in his unjust enrichment.

The sole issue on appeal is whether the court erred in imposing the constructive trust.

We hold that the court's findings of fact are not clearly erroneous. We further hold that its conclusion of law comports in every respect with the New York law on constructive trusts applicable to this diversity action. We therefore hold that the court correctly imposed the constructive trust.

We affirm.

### I.

We summarize only those facts believed necessary to an understanding of the issue raised on appeal.

Appellee Robert Brand ("appellee"), plaintiff below, and appellant, defendant below, are brothers. They are the only children of the late Anton Brand ("Anton") and the late Maria Brand ("Maria"). Both brothers are in their early forties. Appellee is a citizen of Connecticut. He resides with his wife and two children in Newtown. He is employed as a salesman by a chemical company. Appellant is a citizen of New York. He resides on Long Island. He has been a part-time substitute school teacher and, during the summers, a lifeguard.

On February 23, 1950, Anton executed a will leaving his entire estate to his wife Maria, or, in the event that she predeceased him, to his children in equal shares, per stirpes. That will never was revoked or modified. Maria died in 1979. After Maria's death and throughout the period giving rise to the instant action, appellant lived with Anton in a house in Yaphank, New York.

Sometime during 1979, Anton was stricken with Parkinson's disease. Beginning in early 1983, Anton transferred to appellant interests in certain bank and securities accounts ("the accounts") as follows:

| Account | Date of Transfer | Nature of Transfer |
| --- | --- | --- |
| Brokerage account at Janney Montgomery Scott | February 4, 1983 | From Anton to Anton and appellant as joint tenants. |
| Securities account at Federated High Income Securities | February 15, 1983 | From Anton to Anton and appellant with rights of survivorship. |
| Union Savings money market account | March 24, 1983 | From Anton to Anton and appellant with rights of survivorship. |
| Barclay's Bank checking account | August 4, 1983 to September 2, 1983 | From Anton to Anton and appellant with rights of survivorship. |
| Putnam High Yield Securities Trust | 1983 | From Anton to Anton and appellant as joint tenants. |
| Limited partnership interest in Damson Energy Company | 1984 | From Anton to Anton and appellant jointly. |

On November 16, 1984, appellant filled out a preprinted form deed conveying title to the Yaphank house and property ("the Yaphank property") from Anton to appellant. Anton executed and delivered the deed to appellant on the same day.

In a letter from appellant to appellee dated December 5, 1984, appellant discussed in detail Anton's illness and, in the event of his death, how his assets should be treated and how appellant and appellee should share his estate. Appellant suggested that the accounts be left intact and stated that "the interest [should be] shared equally" and that "[a]fter taxes your share should come to over $400. a month. That would be every month for the rest of your life." Appellant suggested also that the Yaphank property "could be sold but I think that would be a mistake. Aside from making you pay high taxes ... it would give a goodly portion of the value of the house to the Government. I think this value should be kept by both of us." Appellant suggested that certain rooms in the house be rented, and stated that "[w]e could split [the] profit and I could also mail you the money every month." The letter further stated:

"I haven't taken this up with Pop but I think he would agree with my ideas of how the estate should be divided. *Pop and I have already taken measures to avoid either lawyers or the Govt. from getting anything from his death.* And, as I see it, if we use this plan we will continue to avoid such potential leeches. And leeches are exactly what they are. Once a lawyer is involved his intentions will be to create greed and discontent. And, if the Government gets involved with any major sale transactions they too become a leech, more of a bandit actually." (emphasis added).

Anton died on July 6, 1985. At that time, the aggregate value of the accounts was approximately $125,000; the value of the Yaphank property was between $100,000 and $125,000. From July to September 1985, both appellee and his attorney attempted through letters to reach a settlement with appellant regarding distribution of the assets. Appellant did not answer these letters.

Appellee commenced the instant diversity action on November 18, 1985. Appellee alleged that, despite the transfer of the assets consisting of the accounts referred to above, Anton before his death had maintained control over, and beneficial ownership of, the accounts. He had continued to reside in the Yaphank house and to pay for its upkeep. Appellee alleged that Anton had transferred the assets solely for the purpose of convenience and had intended appellant to distribute them equally to appellant and appellee on Anton's death. Appellee sought the imposition of a constructive trust on the accounts and the Yaphank property, an accounting by appellant as to his handling of those assets, and money damages.

After a one day bench trial on March 4, 1986, the court announced its findings of fact and conclusion of law from the bench.

The court directed that judgment be entered imposing a constructive trust on the accounts, the Yaphank property, and an automobile in appellant's possession to which, evidence at trial showed, Anton had title prior to his death. The court also directed appellant to render an accounting with respect to his handling of those assets following Anton's death, and directed both appellant and appellee to proceed to probate in the appropriate New York Surrogate's Court.

On June 16, 1986, judgment was entered on the court's findings of fact and conclusion of law. This appeal followed.

## II.

With these facts and prior proceedings in mind, we turn directly to the propriety of the court's imposition of a constructive trust.

It is common ground that New York substantive law applies in this diversity action. " 'A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee.' " *Simonds v. Simonds*, 45 N.Y.2d 238, 241, 380 N.E.2d 189, 193, 408 N.Y.S.2d 359, 363 (1978) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.)).

To be entitled to a constructive trust under New York law, a party must establish four elements: (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *Bankers Security Life Insurance Society v. Shakerdge*, 49 N.Y.2d 939, 939, 406 N.E.2d 440, 440, 428 N.Y.S.2d 623, 624 (1980); *Sharp v. Kosmalski*, 40 N.Y.2d 119, 121, 351 N.E.2d 721, 723, 386 N.Y.S.2d 72, 75 (1976).

The district court held that appellee had established each of these four elements and hence that, under New York law, equity required the imposition of a constructive trust. To the extent that this holding rest-

ed on the court's findings of fact, it may not be set aside unless those findings were clearly erroneous. Fed.R.Civ.P. 52(a). The Supreme Court recently defined the nature of appellate review under the clearly erroneous standard. *Anderson v. City of Bessemer City*, 470 U.S. 564, 573–76 (1985). *Anderson* strikes us as having particular application to the scope of our review on the instant appeal:

"Although the meaning of the phrase 'clearly erroneous' is not immediately apparent, certain general principles governing the exercise of the appellate court's power to overturn findings of a district court may be derived from our cases. The foremost of these principles ... is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently. The reviewing court oversteps the bounds of its duty under Rule 52(a) if it undertakes to duplicate the role of the lower court. 'In applying the clearly erroneous standard to the findings of a district court sitting without a jury, appellate courts must constantly have in mind that their function is not to decide factual issues *de novo*.' *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 123 (1969). If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."

*Anderson*, 470 U.S. at 573–74. It is beyond cavil that these principles apply with equal force to cases—such as the instant

action for a constructive trust—that historically would have been classified as proceedings in equity. *Chris-Craft Industries, Inc. v. Piper Aircraft Corporation*, 480 F.2d 341, 393 (2 Cir.) ("The days are long since past when appellate courts in the federal system in equity cases reviewed findings of fact *de novo.*"), *cert. denied*, 414 U.S. 910 (1973); *see Heyman v. Ar. Winarick Inc.*, 325 F.2d 584, 589 (2 Cir. 1963); *see also Tenneco Oil Co. v. Joiner*, 696 F.2d 768, 776–77 (10 Cir.1982) (district court must make findings of fact and conclusions of law in action for constructive trust). Indeed, the very purpose of Rule 52(a) was to make applicable to all nonjury trials those principles of review which theretofore had been employed in bench trials of only equitable actions. *United States v. United States Gypsum Co.*, 333 U.S. 364, 394–95 (1948); *United States v. Alcoa*, 148 F.2d 416, 433 (2 Cir.1945) (L. Hand, J.).

Mindful of the narrow scope of our review, we turn to the four elements of a constructive trust and to the findings and conclusion of the district court relating to those elements.

### A.

■ As for the first element of a constructive trust—a confidential or fiduciary relationship—"[m]ost frequently, it is the existence of a confidential relationship which triggers the equitable considerations leading to the imposition of a constructive trust". *Sharp, supra*, 40 N.Y.2d at 121, 351 N.E.2d at 723, 386 N.Y.S.2d at 75. Appellant's trial counsel conceded in the district court that a confidential relationship existed between appellant and Anton. *Id.* (indicating that familial relationship often satisfies first element of constructive trust).

### B.

The second element of a constructive trust is the making of a promise. Although the existence of an express promise satisfies this element, an express promise is not required. "Even without an express promise, . . . courts of equity have imposed a constructive trust upon property transferred in reliance on a confidential relationship. In such a situation, a promise may be implied or inferred from the very transaction itself." *Sharp, supra*, 40 N.Y.2d at 122, 351 N.E.2d at 723, 386 N.Y.S.2d at 75. *Accord, Sinclair v. Purdy*, 235 N.Y. 245, 254, 139 N.E. 255, 258 (1923) ("Though a promise in words was lacking, the whole transaction, it might be found, was 'instinct with an obligation' imperfectly expressed.") (Cardozo, J.) (quoting *Wood v. Lucy, Lady Duff-Gordon*, 222 N.Y. 88, 91, 118 N.E. 214, 214 (1917) (Cardozo, J.)).

Indeed, silence itself "in the presence of conditional assertions may constitute tacit consent and promise to comply with the conditions." *Farano v. Stephanelli*, 7 A.D.2d 420, 424, 183 N.Y.S.2d 707, 712 (1st Dept.1959) (Breitel, J.).

Here, the district court held that there was "a promise either express or more likely implied made by [appellant] to his father that he would hold [the transferred] property during the balance of his father's life for him as his estate." Whether a promise can be inferred from circumstances surrounding the transfer of property is a question of law. *Sharp, supra*, 40 N.Y.2d at 122–23, 351 N.E.2d at 724, 386 N.Y.S.2d at 76. Identifying the circumstances that surrounded the transfer, however, involves determinations of factual questions. Hence, the court's determinations regarding what circumstances existed were findings of fact, which cannot be set aside unless clearly erroneous.

The court found that the letter from appellant to appellee provided the strongest evidence that there was a promise. As indicated above, the letter stated that "Pop and I have already taken measures to avoid either lawyers or the Govt. from getting anything from his death". The letter also stated in detail the manner in which the estate would be divided and "profit[s]" "split". The court also found persuasive "the manner in which both [appellant] and his father dealt with the property subsequent to the transfer". The court found

that "it is clear that all that was intended to be done was to change the appearances and manner in which the property was held, [and] that there was no real substantive change in the way the parties dealt with eachother [sic] or dealt with the father's property."

We hold that these findings are not clearly erroneous. Moreover, they adequately support the holding of the court that there was a promise. Although the letter suggested that appellant and Anton had not discussed the exact manner in which the estate would be divided, it strongly indicated that Anton had executed the transfers with the sole intent to avoid taxes and attorney's fees, that Anton and appellant had discussed this sole intent, and that appellant tacitly, if not expressly, had agreed to adhere to his father's wishes in this regard. The district court also concluded properly that Anton's and appellant's treatment of the property after the transfer implied the existence of a promise. *See Foreman v. Foreman,* 251 N.Y. 237, 241, 167 N.E. 428, 429 (1929) (Cardozo, J.). As Judge Breitel stated in *Farano, supra,* where a constructive trust was imposed on property transferred for the sole purpose of avoiding the payment of attorney's fees on the death of the transferor:

> "Proof, moreover, may be admitted as to the conduct of the parties after the conveyance in question.... Thus, here, the execution and delivery of the deed in absolute form changed nothing with respect to the use of the property. The father continued to live in the house, he continued to collect the rents; he continued to pay the expenses of the property; and he continued in every wise as if he were still the sole and absolute owner. To this continued arrangement none of his daughters gainsaid."

*Farano,* 7 A.D.2d at 426, 183 N.Y.S.2d at 713.

The only evidence offered by appellant to contradict the letter and the subsequent treatment of the property was testimony regarding certain conversations between appellant and Anton.[1] Appellant testified that, after he wrote the December 5 letter, Anton told him that he wanted appellant to have the accounts and the Yaphank property. This testimony was treated in what may be said to be an atypical fashion at trial. Appellee objected to the testimony on the ground that any testimony as to conversations between appellant and Anton was barred by New York's Dead Man's Statute. N.Y.Civ.Prac.Law § 4519 (McKinney Supp.1986). In general, that statute precludes an interested person from testifying as to his conversations with a decedent in an action against a person, such as appellant, who has "deriv[ed] his title or interest from, through or under a deceased person". *Id. See Ehrlich v. American Moninger Greenhouse Manufacturing Corp.,* 26 N.Y.2d 255, 258, 257 N.E.2d 890, 892, 309 N.Y.S.2d 341, 343 (1970); *see also Schneider v. Schlager,* 35 A.D.2d 544, 545, 313 N.Y.S.2d 145, 147 (2d Dept.1979) (discussing *Ehrlich*), *aff'd mem.,* 28 N.Y.2d 840, 322 N.Y.S.2d 73 (1971). Under Fed.R. Evid. 601, New York's Dead Man's Statute applied to this diversity action. Previously we have recognized the application of the statute to diversity actions to impose a constructive trust. *Renz v. Beeman,* 589 F.2d 735, 748 n. 12 (2 Cir.1978), *cert. denied,* 444 U.S. 834 (1979). Appellant's trial counsel appeared to agree that the statute barred appellant's testimony. Although the court sustained appellee's objection, the court nevertheless heard the testimony. This was a sensible way to handle the proffered testimony at a bench trial.

In view of the court's findings regarding this testimony, we need not decide whether the Dead Man's Statute barred appellant's testimony. The court stated:

---

**1.** It might be argued that a constructive trust should not be imposed since the acts of Anton in transferring assets to appellant suggest that Anton desired appellant to have those assets. We find this argument to be unpersuasive. By its very nature, the constructive trust remedy generally is available only when there has been a transfer of property. The inquiry of the court is whether that transfer was made in reliance on a promise.

"While [appellant] today on the stand takes the view that this letter resulted from a misunderstanding of what his father had in mind ... at the time of the initial transfers, I am not at all persuaded that that is the case.

On the contrary, I am persuaded that he had accurately judged his father's intentions in conveying this property to him initially which was an effort hardly well devised but nevertheless, an effort to get this property out of his estate at least in appearances so as to avoid probate and taxation....

I don't entirely discredit the conversation which the defendant says he had with his father subsequent to this letter in which the father is said to have judged that the other brother should get less than the defendant proposed in the letter of December 5, that it should be a share but these expressions, these oral expressions besides being the kind of information which the State Civil Practice Law and Rules says should not be taken into account in deciding disposition of property is, itself, such a temporary one sided expression or ex parte expression of the decedent's intentions that it is not terribly reliable, hardly as reliable as the earlier formal expression of the father's intentions with regard to his property expressed in the will, which is that the estate be shared equally between any children he had."

■ Hence, the court took appellant's testimony into account and found that it deserved less weight than the evidence presented by appellee. Such assessments of credibility and weighing of evidence lie exclusively within the province of the trier of the facts and cannot be set aside by us unless clearly erroneous. *Anderson, supra,* 470 U.S. at 574–75; *Van Alen v. Dominick & Dominick, Inc.,* 560 F.2d 547, 550–51 (2 Cir.1977). Therefore, whether appellant's testimony was properly or improperly considered, the court correctly

concluded that the circumstances surrounding the transfer gave rise to an inference that appellant promised Anton to hold the property for his estate.[2] The admission of appellant's testimony, even assuming it should have been barred by the Dead Man's Statute, surely was not prejudicial to *appellant.* After all it was *appellant* who offered it.

### C.

The third element of a constructive trust is that the transfer of the property must have been made in reliance on the promise. Here, the court found that "in reliance on [appellant's] promise his father put the property into his hand or in some instances into [appellant's] name." The court found persuasive on this element the same evidence which was determinative of the existence of the promise. For the reasons stated above, therefore, we decline to set aside the court's holding that the third element was satisfied.

### D.

The fourth element of a constructive trust—unjust enrichment—lies at the heart of the equitable remedy of a constructive trust. "It is not the promise only, nor the breach only, but unjust enrichment under cover of the relation of confidence, which puts the court in motion." *Sinclair, supra,* 235 N.Y. at 253, 139 N.E. at 258. "Unjust enrichment ... does not require the performance of any wrongful act by the one enriched". *Simonds, supra,* 40 N.Y.2d at 242, 380 N.E.2d at 724, 386 N.Y. S.2d at 76. *Accord, Sharon Steel Corp. v. Chase Manhattan Bank,* 521 F.Supp. 118, 126 (S.D.N.Y.1981), *aff'd in part, rev'd in part on other grounds,* 691 F.2d 1039 (2 Cir.1982), *cert. denied,* 460 U.S. 1012 (1983). "A constructive trust may be imposed even though the transferee fully intended to perform his promise at the time

2. It might be said that the will was of little evidentiary weight in view of the fact that it was executed in 1950, long before the transfers to appellant. We reject this claim since it was well within the province of the district court to weigh the evidence. *Anderson, supra,* 470 U.S. at 574–75.

of the conveyance. Actual fraud or undue influence need not be shown. The subsequent abuse of the confidential relation constitutes a sufficient fraud to call upon the remedial powers of a court of equity". *Farano, supra,* 7 A.D.2d at 424, 183 N.Y. S.2d at 711.

"A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties." *Sharp, supra,* 40 N.Y.2d at 123, 351 N.E.2d at 724, 386 N.Y. S.2d at 76. The court in the instant case held that appellant would be unjustly enriched "if he was permitted to retain this property despite the circumstances under which it came into his hands." This holding follows as an inevitable consequence from the court's findings and conclusion on the other elements. Appellant was in a relationship of trust and confidence with his father; appellant made a promise to hold the transferred property for Anton's estate; in reliance on that promise and on their special relationship, Anton transferred almost all of his assets to appellant; by breaching his promise, appellant retained title to those assets that, but for the breach, would have constituted Anton's estate to be distributed under his will. Since appellant holds title to property "under such circumstances that in equity and good conscience he ought not to retain it", *Miller v. Schloss,* 218 N.Y. 400, 407, 113 N.E. 337, 339 (1916), "[t]he unjust enrichment in

this case is manifest". *Simonds, supra,* 45 N.Y.2d at 242, 380 N.E.2d at 195, 408 N.Y.S.2d at 364.[3]

■ We hold that the district court correctly imposed the constructive trust.[4]

### III.

To summarize:

The four elements of a constructive trust under New York law are (1) a confidential or fiduciary relationship; (2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment.

The district court held that appellee had established each of these four elements and hence that equity required the imposition of a constructive trust. The court's findings of fact were not clearly erroneous. Its conclusion of law imposing a constructive trust comports in every respect with the New York law on constructive trusts.

Affirmed.

IRVING R. KAUFMAN, Circuit Judge, (dissenting).

I dissent from the majority's affirmance of the decision below that a constructive trust should be imposed to enable an older, richer, and less filially devoted son to take from a younger, poorer, and more filially

---

3. One might say that imposition of a constructive trust was inequitable under the circumstances and appellant's enrichment was not unjust since appellant has enjoyed less financial success than appellee. This assertion would be without merit, however, since appellant's lack of success did not confer license upon him to breach a promise to his dying father or to retain legal title to property that, in equity and good conscience, he should not hold and enjoy.

4. The district court imposed the constructive trust not only on the assets transferred by Anton to appellant—the accounts and the Yaphank property—but also on a Corvette automobile. Evidence at trial demonstrated that Anton had title to the automobile but that, at least since Anton's death, it had been in the possession of and used by appellant. Since it does not appear that Anton ever transferred any interest in the

automobile to appellant, the circumstances leading to appellant's possession of the automobile do not meet precisely all four elements of a constructive trust as discussed in the body of this opinion. Nevertheless, we hold that the district court properly imposed a constructive trust on the automobile. *Simonds, supra,* 45 N.Y.2d at 241, 380 N.E.2d at 194, 408 N.Y.S.2d at 363 ("Although the [four] factors are useful in many cases constructive trust doctrine is not rigidly limited.... 'A constructive trust will be erected whenever necessary to satisfy the demands of justice'") (quoting *Latham v. Father Divine,* 299 N.Y. 22, 27, 85 N.E.2d 168, 170 (1949)). It is clear that the automobile belonged to Anton, that to allow appellant to keep it would result in his unjust enrichment, and that the automobile properly should be part of Anton's estate probated in the appropriate court.

devoted son assets which their father had transferred to the second son.

I begin my analysis where the majority concludes its:

[U]njust enrichment ... lies at the heart of the equitable remedy of a constructive trust.... 'A conclusion that one has been unjustly enriched is essentially a legal inference drawn from the circumstances surrounding the transfer of property and the relationship of the parties.' [Citation omitted]. The [district] court in the instant case held that appellant would be unjustly enriched 'if he was permitted to retain this property despite the circumstances under which it came into his hands.'

I do not agree with the majority that the district court's holding of unjust enrichment was a correct and, indeed, "inevitable" conclusion in the circumstances here.

In my view, Herbert would be unjustly enriched only if his retention of the property was in fact contrary to Anton's wishes at the time of his death. A court of law might consider this question conclusively settled by Anton's 1950 will—written thirty years before he could have known that it would be Herbert who nursed him as he slowly died of Parkinson's disease over a five-year period—but a court of equity is not so constrained. Bearing in mind that "[e]nrichment alone will not suffice to invoke the remedial powers of a court of equity," it can and should look to all the evidence and make "a realistic determination based on a broad view of the human setting involved" whether "under the circumstances and as between the two parties to the transaction the enrichment be unjust." *McGrath v. Hilding*, 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 606, 363 N.E.2d 328, 331 (1977).

Even if the district court was correct in its view that Anton wished there to be an equal division of property between the brothers when he made the transfers, or even later when Herbert wrote the letter of December 4, 1985, there is simply no evidence at all that this was his intention at the time he died. Except for the will, the only evidence on that subject is the testimony of Herbert as to his conversation with Anton. And the district court refused to "entirely discredit" this testimony.

On this state of the proof, I would hold, Robert did not carry his burden of showing that he was entitled to the aid of a court of equity to disturb the existing positions of the parties. Indeed, I am convinced (and I find nothing to the contrary in either the opinion below or the opinion of the majority here) that Anton in fact wished the property to be disposed of precisely as it would have been but for the intervention of the district court.

My colleagues have properly highlighted in their opinion the lofty principle: "A constructive trust is the formula through which the conscience of equity finds expression," *Simonds v. Simonds*, 45 N.Y.2d 233, 238, 241, 408 N.Y.S.2d 359, 362, 380 N.E.2d 189, 193 (1978) (quoting *Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380 (1919) (Cardozo, J.)). I regret that they have not employed that principle to better effect.